No. 23-1860

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

ST. JOSEPH PARISH ST. JOHNS,
*Plaintiff-Appellant,*

v.

DANA NESSEL, in her official capacity as Attorney General of Michigan; JOHN E. JOHNSON, JR., in his official capacity as Executive Director of the Michigan Department of Civil Rights; PORTIA L. ROBERSON, ZENNA FARAJ ELHASON, GLORIA E. LARA, REGINA GASCO-BENTLEY, ANUPAMA KOSARAJU, RICHARD J. CORRIVEAU, DAVID WORTHAMS, and LUKE R. LONDO, in their official capacities as members of the Michigan Civil Rights Commission,
*Defendants-Appellees.*

_____

On Appeal from the United States District Court
For the Western District of Michigan
_____

**Brief of *Amicus Curiae* Calvin University in Support of Appellant**
_____

Stephen J. van Stempvoort
Miller Johnson
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI  49503
Telephone:  (616) 831-1700
vanstempvoorts@millerjohnson.com
*Counsel for Amicus Curiae*

## <u>Corporate Disclosure Statement</u>

Under Fed. R. App. P. 26.1 and Sixth Circuit R. 26.1(a), *amicus curiae*
Calvin University states that it has no parent corporations, does not issue stock, is
not a subsidiary or affiliate of a publicly owned corporation, and there is no publicly
owned corporation or its affiliate, not a party to this appeal, that has a financial
interest in the outcome of this case.

# <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

Corporate Disclosure Statement ................................................................................i

Index of Authorities ................................................................................ iii

Interest of *Amicus Curiae* ................................................................ v

Introduction ................................................................................1

Argument................................................................................2

I.      ELCRA not only "arguably" applies to religious entities in Michigan; it applies to them on its face...........................................................2

II.     When state actors fail to disavow enforcement of a statute that facially applies to a plaintiff, there is a credible threat of enforcement. ................................................................7

III.    Religious entities in Michigan need guidance on whether their employment and educational decisions are governed by ELCRA. ................................................................11

Conclusion ................................................................13

Certificate of Compliance ................................................14

Certificate of Service ................................................15

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Boy Scouts of Am. v Dale*,
530 U.S. 640 (2000)...................................................................12

*Christian Legal Soc'y v. Walker*,
453 F.3d 853 (7th Cir. 2006) .....................................................12

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day
Saints v. Amos*,
483 U.S. 327 (1987)...................................................................12

*Dambrot v. Cent. Michigan Univ.*,
55 F.3d 1177 (6th Cir. 1995) .......................................................7

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
565 U.S. 171 (2012)...............................................................5, 12

*Kiser v. Reitz*,
765 F.3d 601 (6th Cir. 2014) .......................................................7

*Kuilema v. Calvin University*,
No. 23-03561-CZ (Kent County Cir. Ct.)......................................3

*Kuilema v. Calvin University*,
No. 367310 (Michigan Court of Appeals)......................................5

*McKay v. Federspiel*,
823 F.3d 862 (6th Cir. 2016) ..................................................9, 10

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
140 S. Ct. 2049 (2020)................................................................5

*Peck v. McCann*,
43 F.4th 1116 (10th Cir. 2022) ....................................................8

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme
Ct.*,
769 F.3d 447 (6th Cir. 2014) .......................................................9

*Plunderbund Media, L.L.C v. DeWine*,
753 F. App'x 362 (6th Cir. 2018).................................................8

# INDEX OF AUTHORITIES
(continued)

Page

*Rouch World, LLC v. Dep't of Civil Rights*,
 987 N.W.2d 501 (Mich. 2022).........................................................................5, 6

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014)........................................................................................2, 6

*Virginia v. American Booksellers Association, Inc*.,
 484 U.S. 383 (1988)...................................................................................8, 9, 10

*Vitagliano v. Cnty. of Westchester*,
 71 F.4th 130 (2d Cir. 2023) ..............................................................................10

**Statutes**

Mich. Comp. Laws § 37.2202(1)(a) ........................................................................2

Mich. Comp. Laws § 37.2602(c) & (d) ..................................................................10

**Other Authorities**

Federal Rule of Appellate Procedure 29(a) ..............................................................v

Joseph Kuilema, "The Great Reversal" (Fall 2015),
 https://livestream.com/ calvin-
 university/events/4333446/videos/104790957 .....................................................4

Joseph Kuilema, "Calvin Prof on 'Radical' Watchlist: 'The Call of the
 Prophet is to Speak Truth," *Sojourners* (Dec. 7, 2016),
 https://sojo.net/articles/calvin-prof-radical-watchlist-call-prophet-
 speak-truth.............................................................................................................4

Joseph Kuilema, "The Dangers of Christianity and Social Work," *The
 North American Association of Christians in Social Work* (Jan.
 2017), https:// www.nacsw.org/dangers-of-christianity-and-swk/ ......................4

Joseph Kuilema, "Faith as a Virtue in Social Work Practice," *Social
 Work & Christianity* (Vol. 41, Nos. 2&3) ..........................................................4

Joseph Kuilema, "Reformed and Always Reforming . . . the Police?"
 (Oct. 15, 2020), https://www.youtube.com/ .........................................................4

## Interest of *Amicus Curiae*[1]

Calvin University is a private, Christian liberal arts university located in Grand Rapids, Michigan. With a current enrollment of approximately 3,400 students and an offering of 113 majors, minors, and other programs, Calvin University was founded in 1876 and was named for 16th-century theologian John Calvin. Throughout its history, the university has been affiliated with the Christian Reformed Church in North America, and the historic creeds and confessions of Reformed Christianity guide the university's understanding of Scripture and inform its mission. As a religious institution whose educational project is animated by its Reformed Christian faith and which seeks to foster a community that motivates students and faculty to promote "the welfare of the city and the healing of the world," *see* Jeremiah 29:7, Calvin University requires its faculty, staff, and leadership to abide by the historical teachings of the denomination with which the university is affiliated.

---

[1] *Amicus curiae* submits this brief accompanied by a motion for leave of the Court pursuant to Federal Rule of Appellate Procedure 29(a)(2). Counsel for the parties were informed of this filing. Plaintiff-Appellant consented; Defendants-Appellees did not consent and stated that they do not concur in *amicus*' motion for leave but would not file an opposition to the motion.

Counsel for amici curiae states pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E) that no party or party's counsel authored this brief in whole or in part, and no person other than amici and their counsel contributed money intended to fund preparing or submitting this brief.

As a religious employer and as a religious educational institution, Calvin University has an interest in determining whether and to what extent the provisions of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") apply to religious entities like the university. Calvin University's interest in this issue is particularly pronounced due to the fact that it was recently sued in Michigan state court by a former professor, who alleged that Calvin University violated ELCRA when it determined not to renew his teaching contract for essentially religious reasons. Calvin University submits this brief to aid this Court's assessment of whether there is a real possibility that ELCRA will be applied to religious entities in Michigan in a manner that is inconsistent with the First Amendment.

## Introduction

The district court dismissed the complaint filed by St. Joseph Parish St. Johns ("St. Joseph") for lack of standing, concluding in large part that there is no credible likelihood that the Elliott-Larsen Civil Rights Act ("ELCRA") would be applied to religious schools or employers in a manner that violates the First Amendment. The district court's ruling was incorrect. Calvin University was sued in April 2023 by one of its former professors, who alleged that the university discriminated against him on the basis of "sex" in violation of ELCRA when his teaching contract was non-renewed after he officiated a same-sex wedding. Despite the fact that the professor admits that his own sex played no role in his non-renewal and that his non-renewal was in fact occasioned by his misalignment with Calvin University's religious views, the Michigan trial court refused to dismiss the complaint, reasoning that the First Amendment did not bar it.

As Calvin University's experience attests, the district court was mistaken about the likelihood that ELCRA will be applied in a manner that appropriately safeguards religious entities' First Amendment rights. ELCRA, by its plain terms, applies to religious entities in Michigan with no exceptions. Those entities are faced with the prospect of knowingly violating the plain text of the statute, in the hope that a Michigan court will eventually determine that the First

Amendment will vindicate their right to do so. Those are precisely the circumstances in which preenforcement challenges are appropriate.

Religious entities in Michigan have a strong—and present—interest in obtaining direction from the federal courts about whether ELCRA may constitutionally be applied to them, including with respect to their employment decisions. The district court's judgment should be reversed.

<u>**Argument**</u>

## I. ELCRA not only "arguably" applies to religious entities in Michigan; it applies to them on its face.

St. Joseph's appeal turns on the second and third factors outlined in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–67 (2014). (Appellant's Br. at 24).

The second *SBA List* factor asks whether the plaintiff's "intended future conduct is 'arguably ... proscribed by [the] statute' they wish to challenge." *SBA List*, 573 U.S. at 162. On the current record, there is no real dispute that this factor is met.

For example, the amended version of ELCRA prohibits employment discrimination on the basis of religion, sexual orientation, and gender identity or expression. Mich. Comp. Laws § 37.2202(1)(a). The statute contains no exemptions for religious employers. And St. Joseph's second amended complaint alleges that it seeks to hire as teachers only applicants who are practicing Catholics, which requires them to comply with the Catholic Church's historical teaching on gender, sexuality,

2

and marriage. (Second Amended Complaint, RE 40, PageID.663, 671). On its face, there is not even any debate about whether ELCRA "arguably" applies here; the plain language of the statute squarely prohibits St. Joseph's intended conduct.

Despite the fact that the plain text of ELCRA unquestionably applies to the employment decisions of religious schools like St. Joseph, the district court ruled that the statute does not "arguably" proscribe St. Joseph's intent to (for example) hire only co-religionists as teachers. The district court reached this conclusion in large part because the district court believed that Michigan courts would recognize that the First Amendment does not allow the statute to sweep that broadly. But the district court significantly overestimated the Michigan courts' likelihood of cabining ELCRA in the manner that the First Amendment requires.

Calvin University's recent experience is one example. Calvin University is a private, not-for-profit religious university that is affiliated with the Christian Reformed Church in North America. In April 2023, Calvin University was sued in Michigan state court by a former social work professor, who asserted a sex-discrimination claim under ELCRA and alleged that his teaching contract had been non-renewed because he had officiated an LGBTQ+ wedding. *See Kuilema v. Calvin University*, No. 23-03561-CZ (Kent County Cir. Ct.).

Professor Kuilema's complaint admitted that, as a professor, his responsibilities included "teaching courses from a Reformed Christian perspective"

and admitted that he "used . . . his courses to teach students about different faiths and belief systems." Professor Kuilema also squarely alleged that his non-renewal was the result of religious differences between himself and his religious employer. His complaint asserted that he was terminated because his decision to officiate the wedding "was contrary to the [religious denomination's] position regarding same sex relationships." Professor Kuilema also alleged that he actively opposed the denomination's religious beliefs regarding same-sex marriage, including when he taught his students, and that he was denied tenure "based on the [denomination's] interpretation of scripture" regarding same-sex relationships.[2]

---

[2] Professor Kuilema has also preached sermons at Calvin University's chapel, written academic articles discussing the intersection of his faith and his academic work, and given lectures to students replete with religious and scriptural references. *See, e.g.*, Joseph Kuilema, "The Great Reversal" (Fall 2015), https://livestream.com/calvin-university/events/4333446/videos/104790957; Joseph Kuilema, "Faith as a Virtue in Social Work Practice," *Social Work & Christianity* (Vol. 41, Nos. 2&3), 155-174; Joseph Kuilema, "Calvin Prof on 'Radical' Watchlist: 'The Call of the Prophet is to Speak Truth," *Sojourners* (Dec. 7, 2016), https://sojo.net/articles/calvin-prof-radical-watchlist-call-prophet-speak-truth ("I am a Christian, and I love the freedom to talk about my faith in the classroom. I think my students would tell you that I am rarely happier than when wrestling through the implications of theology for the ways we as social workers engage with our clients and communities."); Joseph Kuilema, "The Dangers of Christianity and Social Work," *The North American Association of Christians in Social Work* (Jan. 2017), https://www.nacsw.org/dangers-of-christianity-and-swk/; Joseph Kuilema, "Reformed and Always Reforming . . . the Police?" (Oct. 15, 2020), https://www.youtube.com/watch?v=t1Q--8TqoxY; *id.* at 13:28-18:31.

Despite the fact that Professor Kuilema affirmatively alleged that the dispute between him and Calvin University stemmed from their religious differences and despite the fact that his complaint is a textbook case in which to apply the ministerial exception,[3] the Michigan trial court refused to rule that the claims were barred by the First Amendment and refused to dismiss the complaint.[4]

The district court here, in other words, was wrong to believe that Michigan courts would never rule that ELCRA would apply to schools like St. Joseph and to disputes that are unmistakably religious. At least one Michigan court already has.

The circumstance in which Calvin University finds itself was accurately augured by the dissent in *Rouch World, LLC v. Dep't of Civil Rights*, 987 N.W.2d 501 (Mich. 2022). In *Rouch World*, the Michigan Supreme Court construed the term "sex" in the pre-amendment version of ELCRA as encompassing sexual

---

[3] "The religious education and formation of students is the very reason for the existence of most private religious schools, and therefore the selection and supervision of the teachers upon whom the schools rely to do this work lie at the core of their mission." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2056 (2020). Because teachers at such a school are entrusted with "transmitting the . . . faith to the next generation," courts routinely bar employment discrimination claims asserted by such employees. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 192 (2012).

[4] Calvin University has requested leave from the Michigan Court of Appeals to file an interlocutory appeal. That request remains pending. *See Kuilema v. Calvin University*, No. 367310 (Michigan Court of Appeals).

orientation discrimination. *Id*. at 514. The dissent, pointing to ELCRA's failure to include any specific exemptions for religious entities, observed that the majority's broad interpretation of the statute may pose First Amendment problems when applied to religious entities. *Id*. at 556 (Viviano, J., dissenting) ("[T]he majority has reached its interpretation today without any concern for whether that interpretation violates constitutional protections of religious liberty.").

That prediction has already come true. The dissenting justices in the Michigan Supreme Court accurately forecasted the likely path of the Michigan state courts; the federal district court here did not. Indeed, that Calvin University was sued under the pre-amendment version of ELCRA only underscores the increased probability that claims will be asserted against religious entities under the amended version of ELCRA, which makes the newly protected categories explicit.

The fact that ELCRA is so "broad" (as the Appellees point out, *see* MTD, RE 44, PageID.845), makes the flaws in the district court's reasoning all the more pronounced. The broader the statutory regime, the more likely that someone will attempt to apply it to the plaintiff's constitutionally protected conduct. *See, e.g*., *SBA List*, 573 U.S. at 162 (holding that Ohio's law "arguably" proscribed the plaintiff's conduct in part because the law "sweeps broadly").

This is true even though the Appellees assert that they do not intend to apply the statutory regime to constitutionally protected conduct. Even having the

best of intentions (*but see* Appellant's Br. at 11-12) does not change the analysis. "The broad scope of the [relevant] language presents a 'realistic danger' the [government actor] could compromise the protection afforded by the First Amendment." *Dambrot v. Cent. Michigan Univ*., 55 F.3d 1177, 1183 (6th Cir. 1995) (declining to save an unconstitutional speech policy even though defendants argued that they would not apply it in an unconstitutional manner).

The district court was wrong to opine that ELCRA's plain terms would almost certainly not be applied to entities like St. Joseph. In fact, recent history suggests the opposite.

## II. When state actors fail to disavow enforcement of a statute that facially applies to a plaintiff, there is a credible threat of enforcement.

The district court erred in its analysis of the third *SBA List* factor, too. Despite acknowledging that the Appellees failed to disavow the application of ELCRA to St. Joseph, the district court glossed over this failure in a single sentence, giving it almost no weight. (Opinion, RE 58, PageID.1181).

But the Appellees' failure to disavow enforcement virtually ensures that standing exists. In the absence of a disavowal, the threat of enforcement "is considered especially substantial." *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014). When (1) the plaintiff intends to engage in conduct that violates the plain terms of a statute, (2) the State knows what the plaintiff intends to do, and (3) the State declines to disavow attempts to penalize the plaintiff for its intended conduct, courts have

little trouble concluding that the plaintiff has standing to assert a preenforcement challenge. *See, e.g.*, *SBA List*, 573 U.S. at 159–60; *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383, 393 (1988); *Plunderbund Media, L.L.C v. DeWine*, 753 F. App'x 362, 371 (6th Cir. 2018). *See also Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022) ("[A] refusal to provide such an assurance undercuts Defendants' argument that [the plaintiff's] perception of a threat of prosecution is not objectively justifiable.").

The same dynamic is on full display here. The Appellees could have gone through St. Joseph's complaint and explained that they would never seek to enforce ELCRA in any of the scenarios articulated in the complaint or with respect to any of St. Joseph's intended courses of action. Instead, the Appellees refused to identify any particular circumstance in which they would not apply ELCRA to St. Joseph, arguing that "[i]t is impossible for Defendants to disavow application of a statute as broad as the ELCRA to St. Joseph where the religious freedom inquiry would be so fact dependent." (MTD, RE 44, PageID.845).

Having failed to disavow the enforcement of ELCRA with respect to the particular conduct in which St. Joseph alleged it intends to engage, the Appellees leave religious entities in Michigan under the threat of the plain language of the statute, without any assurance that the Appellees will not try to enforce it against them. This mirrors the scenarios in which courts routinely deem it appropriate for

plaintiffs to seek a declaration from a federal court *ex ante*, instead of being forced first to expose themselves to civil penalty and to seek vindication only *ex post*. *See, e.g.*, *SBA List*, 573 U.S. at 159–60; *American Booksellers*, 484 U.S. at 393.

To the extent that the district court believed that the factors identified in *McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016), each tilt against standing, it was incorrect. First, *McKay* did not hold that the factors that it identified were the only ones possible; it held only that they were the most typical. *Id*. at 869. There is no requirement that a plaintiff point to anything other than, for example, the plaintiff's self-censorship, the defendant's refusal to disavow enforcement, and a statutory provision that allows any person to initiate enforcement of the statute in question. *See, e.g.*, *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct*., 769 F.3d 447, 452 (6th Cir. 2014) (finding standing for a preenforcement challenge on those facts). Those are the same facts that St. Joseph alleges in this case.

Second, the district court erred in relying heavily upon the perceived lack of prosecution history against religious schools. The amended version of ELCRA has not yet been enforced because it is a new statute that is not—as of the date of this brief—yet in effect. The Appellees have refused to state that they will not enforce ELCRA against religious entities like St. Joseph once the amended version of the statute goes into effect. And where a state actor declines to argue that

it will not enforce a newly enacted law, courts presume that the law will be enforced. *See American Booksellers*, 484 U.S. at 393; *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 138 (2d Cir. 2023) ("[C]ourts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund."). In any event, the prior version of ELCRA has indeed been leveraged against religious entities with respect to their alleged religiously motivated employment decisions, as demonstrated by Calvin University's experience.

Third, as *McKay* recognized, the existence of a credible threat of prosecution is bolstered when "the challenged statute . . . makes enforcement easier or more likely," such as when it contains "a provision allowing any member of the public to initiate an enforcement action." *McKay*, 823 F.3d at 869. That is true here. (Appellant's Br. at 9-10); *see also* Mich. Comp. Laws § 37.2602(c) & (d). The district court sidelined this factor on the theory that ELCRA would not be applied whenever the First Amendment did not allow it to be applied. (Opinion, RE 58, PageID.1180). But that analysis recycles the same flawed reasoning that motivated the district court's conclusion that ELCRA does not "arguably" apply to religious entities in the first place. The district court accepted the Appellees' *ipse dixit* that the statute would not apply to religious entities in an unconstitutional manner, even though the Appellees refused to agree that they would decline to apply the statute against St. Joseph in any of the particular circumstances alleged in St. Joseph's

10

second amended complaint—each of which is facially prohibited by the statute's plain text.

On the facts alleged, the district court erred in concluding that there was no credible threat of enforcement.

## III.    Religious entities in Michigan need guidance on whether their employment and educational decisions are governed by ELCRA.

The district court's analysis muddles the inquiry—and does so in a way that hobbles religious entities' ability to know whether and how ELCRA might apply to their conduct. Under the district court's ruling, religious schools and employers in Michigan have little choice other than to either compromise their religious faith traditions or to knowingly violate the plain text of the law, in the hope that Michigan courts will subsequently agree with them that the First Amendment protects their conduct. Calvin University's experience with that regime has been less than reassuring. And in the meantime, the uncertainty imposes significant burdens on religious communities. Many religious employers and schools are organized on a non-profit basis and may determine that the potentially substantial costs of defending their First Amendment rights cannot be sustained.

If uncorrected, the district court's determination to avoid answering the First Amendment issues posed in St. Joseph's complaint will dilute religious communities' ability to access robust First Amendment protections in the context of issues related to ELCRA. That dilution will have significant consequences.

11

"Religious groups are the archetype of associations formed for expressive purposes." *Hosanna-Tabor Evangelical Lutheran Church & Sch. V. EEOC*, 565 U.S. 171, 200 (2012), (Alito, J., and Kagan, J., concurring). The ability to determine that certain activities in furtherance of a religious organization's mission should be conducted only by "those committed to that mission" is "a means by which a religious community defines itself." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 342 (1987) (Brennan, J., concurring). Applying antidiscrimination law to override a religious institution's decision to disaffiliate itself with inconsistent views not only would impair the institution's ability "to express those views, and only those views, that it intends to express," *Boy Scouts of Am. v Dale*, 530 U.S. 640, 648 (2000), but would also cause that institution "as it currently identifies itself to cease to exist." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 863 (7th Cir. 2006).

The district court was incorrect to conclude that disputes over whether ELCRA may apply to religious entities are not ripe for decision. Long before the time envisioned by the district court, Michigan religious communities' "process of self-definition [will] be shaped in part by the prospects of litigation." *Amos*, 483 U.S. at 343–44 (1987) (Brennan, J., concurring). Under the First Amendment, a religious community should not be forced to inappropriately skew its religious identity in response to those types of external pressures. *Id*. St. Joseph's lawsuit is an

appropriate attempt to prevent that prospect by asking for timely guidance from the

federal courts about the constitutional scope of ELCRA so that religious entities can

order their decisions accordingly.

## **Conclusion**

The district court's judgment should be reversed.


Dated:  December 6, 2023    /s/    Stephen J. van Stempvoort
                                             Stephen J. van Stempvoort (P79829)
                                           Miller Johnson
                                           45 Ottawa Avenue SW, Suite 1100
                                           Grand Rapids, MI  49503
                                           Telephone:  (616) 831-1700
                                           vanstempvoorts@millerjohnson.com

                                           *Counsel for Amicus Curiae*

13

### Certificate of Compliance

In accordance with Fed. R. App. P. 29(a)(5) and 32(a)(7), and Sixth Circuit Rule 32, I certify that this brief complies with the applicable type-volume limitations because this brief contains 3,374 words, including footnotes and excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b)(1). It complies with typeface requirements for Fed. R. App. P. 32(a)(5) and the Circuit Rules because it has been set in Times New Roman font in a size measuring 14 points.

Dated:  December 6, 2023       /s/ Stephen J. van Stempvoort
                                        Attorney for *Amicus Curiae*

## Certificate of Service

Stephen J. van Stempvoort certifies that, on December 6, 2023, he caused a copy of this document to be served upon all parties of record, and that such service is being made electronically upon each counsel of record so registered with the Court of Appeals for the Sixth Circuit.

Dated:  December 6, 2023    /s/ Stephen J. van Stempvoort
                                           Attorney for *Amicus Curiae*

MJ_DMS 37129661v1 13381-16