No. 23-1860

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ST. JOSEPH PARISH ST. JOHNS,

     Plaintiff-Appellant,

v.

DANA NESSEL, JOHN E. JOHNSON, JR., PORTIA L. ROBERSON, ZENNA FARAJ ELHASON, GLORIA E. LARA, REGINA GASCO-BENTLEY, ANUPAMA KOSARAJU, RICHARD CORRIVEAU, DAVID WORTHAMS, and LUKE R. LONDO,

     Defendants-Appellees.

Appeal from the United States District Court
Western District of Michigan, Southern Division
Honorable Jane M. Beckering

**BRIEF FOR DEFENDANTS-APPELLEES**

Heather S. Meingast (P55439)
Assistant Attorney General
Attorney for Defendants-Appellees
Civil Rights & Elections Division
P. O. Box 30726
Lansing, MI 48909
(517) 335-7659
meingasth@michigan.gov

Kimberly K. Pendrick (P60348)
Tonya C. Jeter (P55352)
Assistant Attorneys General
Counsel of Record

Attorney for Defendants-
Appellees
Civil Rights & Elections Division
3030 W. Grand Blvd., 10th Floor
Detroit, Michigan 48202
313.456.0067
pendrickk@michigan.gov

Dated:    January 19, 2024

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................... iv

Statement in Support of Oral Argument ................................... ix

Jurisdictional Statement ............................................................. 1

Statement of Issues Presented .................................................... 2

Introduction ................................................................................ 3

Counter-Statement of the Case ................................................... 5

      A.    A brief chronology of the recent progression of LGBTQ rights in Michigan. ................................................................ 5

      The Commission's Interpretive Statement ..................................... 5

      *Rouch World, LLC, et al. v. Dep't of Civil Rights* ............................ 6

      The ELCRA is amended to include sexual orientation and gender identity and expression as protected categories. ....... 8

      B.    Procedural history .................................................. 9

      St. Joseph's claims ........................................................ 9

      The District Court dismisses the complaint. ............................... 10

Standards of Review .................................................................. 12

Summary of Argument .............................................................. 12

Argument ................................................................................... 14

I.    The District Court correctly held that St. Joseph did not have standing to maintain its claims. ........................................ 14

A.     Standing requires a concrete, actual or imminent harm, not a generalized grievance against government conduct or a mere subjective allegation of chill.................... 14

B.     St. Joseph failed to sufficiently allege an injury to support pre-enforcement review. ........................... 17

    1.     St. Joseph's intended conduct is not arguably proscribed by the amended ELCRA............................ 18

    2.     St. Joseph failed to sufficiently allege a credible threat of enforcement under the ELCRA. ................... 24

       a.     There is no history of past enforcement of the ELCRA against St. Joseph. ......................... 28

       b.     There are no non-speculative threats of enforcement of the ELCRA. ................................ 32

       c.     The provisions of the ELCRA do not make enforcement against St. Joseph easier or more likely........................................................... 33

       d.     The inability to disavow enforcement of the ELCRA does not weigh in favor of standing here.................................................................... 33

II.     St. Joseph's claims are not ripe for review because it has not demonstrated a credible threat of enforcement of the ELCRA against it........................................................................ 39

A.     For a claim to be ripe, the factual record must be sufficiently developed, and a credible threat of harm must exist, and the denial of review must create a hardship........................................................................ 39

    1.     St. Joseph did not allege a credible threat of enforcement under the ELCRA. ................................. 41

    2.     St. Joseph's claims do not arise out of sufficiently concrete facts to support judicial review. ................... 44

3.     St. Joseph has not shown sufficient hardship absent judicial relief at this stage. ..............................45

Conclusion and Relief Requested.............................................................48

Certificate of Compliance.......................................................................49

Certificate of Service ............................................................................50

Designation of Relevant District Court Documents..............................51

# TABLE OF AUTHORITIES

Page

## Cases

*Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967) ....................................... 40

*Adult Video Ass'n v. United States Dep't of Just.*, 71 F.3d 563 (6th Cir. 1995) ............................................................................... 16

*Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233 (Mich. Ct. App. 1988) .................................................................... 22, 23

*Bigelow v. Virginia,* 421 U.S. 809 (1975) ............................................... 16

*Block v. Canepa*, 74 F.4th 400 (6th Cir. 2023) ................................. 30, 31

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) .................................... 7

*Champion v. Secretary of State*, 761 N.W.2d 747 (Mich. App. 2008) ..... 20

*Daunt v. Benson,* 956 F.3d 396 (6th Cir. 2020) ..................................... 15

*Davis v. City of Clarksville,* 492 Fed. Appx. 572 (6th Cir. 2012) ............ 29

*Davis v. Colerain Twp., Ohio*, 51 F.4th 164 (6th Cir. 2022) ................... 34

*Doe v. Univ. of Mich.*, 78 F.4th 929 (6th Cir. 2023) ......................... 30, 43

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018) ...................................................................... 5

*Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872 (1990) ............................................................................ 21, 23

*Fisher v. Thomas*, 52 F.4th 303 (6th Cir. 2022) ..................................... 26

*Glenn v. Holder,* 690 F.3d 417 (6th Cir. 2012) ................................ 12, 24

*Graveline v. Benson*, 992 F.3d 524 (6th Cir. 2021) ........................... 15, 18

*Green Party of Tenn. v. Hargett,* 791 F.3d 684 (6th Cir. 2015) ............. 35

iv

*Kentucky v. Yellen*, 54 F.4th 325 (6th Cir. 2022) ................................... 18

*Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014) ............................................ 17

*Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505 (6th Cir. 2006)...................... 40

*Lovely v. United States*, 570 F.3d 778 (6th Cir. 2009) ............................ 12

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)........................ 12, 15

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999) ................................................................................ 41, 44

*McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. 2012) ..................... 12

*McLeod v. Providence Christian Sch.*, 408 N.W.2d 141 (Mich. Ct. App. 1987)*.*............................................................................................. 22

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) .................... 39

*Michigan Dept. of Civil Rights ex rel. Forton v. Waterford Tp. Dept. of Parks & Recreation*, 387 N.W.2d 821 (Mich. 1986)................ 19

*Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533 (6th Cir. 2010) ...................................................................................... 41

*Miller v. City of Wickliffe*, 852 F.3d 497 (6th Cir. 2017)........................ 39

*Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997)..... 24, 40

*NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979) ................... 23

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002).................................... 41

*Our Lady of Guadalupe School v. Morrissey-Berry*, 140 S. Ct. 2049 (2020) ................................................................................................... 22

*Parsons v. United States Dep't of Just.,* 801 F.3d 701 (6th Cir. 2015) ............................................................................................... 16, 17

*Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991) .............. 38

*Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447 (2014) ................................................... 27

*Plunderbund Media, LLC v. DeWine*, 753 F. App'x 362 (6th Cir. 2018) ............................................................................................. 26

*Porth v. Roman Cath. Diocese*, 532 N.W.2d 195 (Mich. Ct. App. 1995) ............................................................................................... 22

*Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007) ............................................................................................... 12

*Rouch World v. Dep't of Civil Rights*, 987 N.W.2d 501 (Mich. 2022) .. 6, 7, 9, 29, 41

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) ................. 31

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .............................. 15

*Texas v. United States*, 523 U.S. 296 (1998) .......................................... 40

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985) ......... 40

*Town of Chester, N.Y. v. Laroe Estates, Inc.*, ___ U.S. ___, 137 S. Ct. 1645 (2017) ............................................................................... 15

*Turtle Island Foods, S.P.C. v. Strain,* 65 F.4th 211 (2023) .................... 27

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984) ................................................................... 16

*United States v. Hays*, 515 U.S. 737 (1995) ........................................... 15

*Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022) ............................................................... 36

*Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008) ....................... 40

*Weishuhn v. Cath. Diocese*, 756 N.W.2d 483 (Mich. Ct. App. 2008) ....... 22

*White v. United States,* 601 F.3d 545 (6th Cir. 2010) ............................. 12

*Whole Woman's Health v. Jackson*, ___ U.S. ___, 142 S. Ct. 522 (2021) ............................................................................26

*Younger v. Harris*, 402 U.S. 37 (1971) ............................................26, 41

**Statutes**

Mich. Comp. Laws § 37.2101.....................................................................3

Mich. Comp. Laws § 37.2102(1) ...............................................................5

Mich. Comp. Laws § 37.2103(i) ................................................................5

Mich. Comp. Laws § 37.2201(a) ..............................................................19

Mich. Comp. Laws § 37.2208...............................................20, 35, 36, 44

Mich. Comp. Laws § 37.2301(a) ..............................................................19

Mich. Comp. Laws § 37.2401....................................................................19

Mich. Comp. Laws § 37.2403....................................................................36

Mich. Comp. Laws § 37.2601................................................................5, 25

Mich. Comp. Laws § 37.2602................................................................6, 43

Mich. Comp. Laws § 37.2602(c)...............................................................43

Mich. Comp. Laws § 37.2302....................................................................19

Mich. Comp. Laws § 37.2705....................................................................20

Mich. Comp. Laws § 37.2705(1) ..............................................................20

Mich. Comp. Laws § 37.2101....................................................................34

**Other Authorities**

28 U.S.C. § 1291 .......................................................................................1

Mich. Admin. Code, R. 37.20...................................................................20

## Constitutional Provisions

Mich. Const. 1963, Art. V, § 29 ....................................................................5

Mich. Const. 1963, Art. I, § 2 ...............................................................5, 21

Mich. Const. 1963, Art. IV, § 27 .............................................................9

Mich. Const. 1963, Art. V, § 29 ..............................................................32

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant, St. Joseph Parish St. Johns, has requested oral argument. Defendants-Appellees believe that oral argument is unnecessary for the Court to decide the issues presented in this appeal of the District Court's well-reasoned opinion and that the issues raised in this appeal are resolved by established law. However, if the Court grants oral argument, Defendants request the opportunity to present argument.

## JURISDICTIONAL STATEMENT

Defendants agree this Court generally has jurisdiction over appeals from final decisions of district courts under 28 U.S.C. § 1291. The District Court dismissed this case on August 22, 2023. (Op. & Ord., R. 58, Page ID # 1182; Judgment, R. 59, Page ID # 1183.) In doing so, the District Court also denied St. Joseph's Plaintiff's motion for declaratory and injunctive relief. (*Id.*) Plaintiff timely filed a notice of appeal, giving this Court appellate jurisdiction under 28 U.S.C. § 1291. (Op. & Ord., R. 58, Page ID ## 1156–1182.)

## STATEMENT OF ISSUES PRESENTED

1.   To establish standing, a party must show injury in fact, not just a generalized grievance against governmental conduct, and, for a First Amendment claim, a party must show an injury that is actual and imminent, not just a subjective allegation of chilled speech.  St. Joseph relied on mere speculation that, in future, it may be investigated or prosecuted for practicing its religious beliefs under the amended Elliott-Larsen Civil Rights Act.  Should this Court affirm the District Court's dismissal of the second amended complaint?

2.   The ripeness doctrine is designed to ensure that the jurisdiction of the federal courts is limited to actual cases and controversies, not premature, abstract disagreements that may not occur, and a plaintiff must show a credible fear that the anticipated action will occur.  The record established that none of the Defendants have *ever* interfered with St. Joseph's church autonomy or business operations, educational institution, or employment decisions, let alone threatened to investigate or take any enforcement action against it because of its religious beliefs.  Should this Court affirm the District Court's dismissal of the second amended complaint?

## INTRODUCTION

This case exemplifies why the Supreme Court has reiterated that allegations of *possible* future constitutional violations, and a plaintiff's speculative fear alone, are insufficient to demonstrate Article III standing. The test does not change simply because a case may otherwise present significant constitutional questions.

St. Joseph Parish St. Johns (St. Joseph) argues that any application of Michigan's Elliott-Larsen Civil Rights Act (ECLRA), Mich. Comp. Laws § 37.2101 *et seq.,* which protects against sexual orientation and gender identity discrimination to it, violates its religious freedoms. This fear is not only speculative, but entirely unfounded. St. Joseph has not been the subject of any action by the Michigan Department of Civil Rights (MDCR) or the Michigan Civil Rights Commission (Commission). Nor have any similar religious entities been found to be in violation of the ECLRA since its recent expansion. There is also no evidence that the MDCR or the Commission will fail to consider religious freedoms in any future investigations. In fact, the ELCRA *requires* consideration of those freedoms.

On these facts, the District Court determined that the ELCRA does not facially fail to recognize religious freedoms and thus does not proscribe the activities in which St. Joseph seeks to engage. The court further concluded that St. Joseph had not shown a threat of imminent enforcement of the ELCRA where there were simply no complaints against it or similar entities. The court therefore concluded that St. Joseph lacked standing and dismissed its complaint.

Because Michigan's civil rights law already incorporates religious protections and acknowledges "religion" as a protected civil right, and where there is no evidence that the Defendants have, or will, fail to consider religious freedoms when investigating, charging, or deciding a civil rights claim, this Court should affirm the dismissal of St. Joseph's complaint for lack of standing.

## COUNTER-STATEMENT OF THE CASE

### A.    A brief chronology of the recent progression of LGBTQ rights in Michigan.

**The Commission's Interpretive Statement.**

The ELCRA has long provided protection from discrimination based upon "sex" but, prior to its recent amendment, it did not specify whether the "because of . . . sex" language included protection for individuals based upon sexual orientation or gender identity.  *See* Mich. Comp. Laws §§ 37.2102(1), 37.2103(i).

On May 21, 2018, the Commission[1] adopted Interpretive Statement 2018-1, in which it concluded that "sexual orientation" and "gender identity" fall within the meaning of "sex" as used in the ELCRA.  (Am. Compl., R. 40, Page ID ## 676–677.)  The Commission relied on *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018), in which this Court held that Title VII's "discrimination because of . . . sex" provision included protection for a

---

[1] The Commission was established by the Michigan Constitution of 1963 to carry out the guarantees against discrimination articulated in Article 1, § 2.  *See* Mich. Const. 1963, Art. 1, § 2 and Art. 5, § 29.  The Commission's duties are established by law.  *See* Mich. Comp. Laws § 37.2601 *et seq.*

transgender Michigan woman.  (Interpretive Statement 2018-1, R. 44-2, Page ID # 854.)  Accordingly, the Commission found "that continuing to interpret the protections afforded by the phrase 'discrimination because of . . . sex' more restrictively by continuing to exclude individuals for reasons of their gender identity or sexual orientation would itself be discriminatory."  (*Id*.)

### *Rouch World, LLC, et al. v. Dep't of Civil Rights*

Rouch World, LLC, a wedding venue that denied wedding venue services for a same sex wedding, and Uprooted Electrolysis, LLC, which denied hair removal services to a transgender woman filed a complaint against the Michigan Department of Civil Rights (MDCR) and the Michigan Civil Rights Commission.[2]  *Rouch World v. Dep't of Civil Rights*, 987 N.W.2d 501, 505–506 (Mich. 2022).  Both entities asserted that providing those services would violate their religious beliefs.  In December 2020, the trial court held that discrimination because of sex under the ELCRA includes discrimination because of an individual's

---

[2] Rouch World and Uprooted Electrolysis were both the subject of administrative complaints filed with the MDCR due to allegations of failing to provide public accommodations.  *See* Mich. Comp. Laws § 37.2602.

6

"gender identity" and granted relief in favor of the Michigan

Department of Civil Rights (MDCR) regarding Uprooted Electrolysis's

claim.  *Id*.  However, on the basis of stare decisis, the court denied relief

as to the sexual orientation claim.  *Id*.

Regarding Rouch World and Uprooted Electrolysis' First

Amendment free exercise of religion claim, the trial court concluded

that the issue had not "been sufficiently briefed to resolve at this

juncture."  (*Rouch World, LLC v. Dep't of Civ. Rights*, unpublished order

of the Court of Claims, R. 44–3, Page ID # 864.)  Uprooted Electrolysis

did not appeal the gender-identity ruling.

The Michigan Supreme Court granted the MDCR's bypass

application challenging the trial court's opinion that ELCRA's "because

of sex" provision did not encompass discrimination because of an

individual's sexual orientation.  *Rouch World*, 987 N.W.2d at 506.  On

July 28, 2022, the Michigan Supreme Court, relying on *Bostock v.*

*Clayton Cnty.*, 140 S. Ct. 1731 (2020), held that discrimination on the

basis of sexual orientation is discrimination because of sex, and that the

denial of "the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations" at a "place of public

accommodation or public service" on the basis of sexual orientation is

discrimination "because of . . . sex" in violation of § 302a of the ELCRA,

Mich. Comp. Laws § 37.2302(a). *Id.* at 519. The court did not address

"[w]hether enforcement under the ELCRA for sexual-orientation and

gender-identity discrimination would violate [the] plaintiffs' federal and

state constitutional religious liberty protections," because that had "not

yet been adjudicated below" and was "not currently before" the court.

*Rouch World,* 987 N.W.2d at 506 n.5. *Rouch World* was then remanded

to the trial court for further proceedings. *Id.*

On January 27, 2023, the trial court dismissed the case by

stipulation of the parties, leaving the MDCR to process the

administrative complaints previously filed against Rouch World and

Uprooted Electrolysis. (*Rouch World, LLC v. Dep't of Civ. Rights*,

Stipulated Order of Dismissal, R. 44–4, Page ID # 866.)


**The ELCRA is amended to include sexual orientation and gender identity and expression as protected categories.**

On March 16, 2023, Michigan Governor Gretchen Whitmer signed

into law Public Act 6 of 2023, amending the ELCRA to expressly include

sexual orientation and gender identity or expression as protected

categories.[3]  These amendments will become effective on February 13, 2024.  *See* Mich. Const. 1963, Art. IV, § 27.  In the interim, the *Rouch World* decision will continue to govern interpretation of the term "sex" as used in the ELCRA.

### B.    Procedural history

**St. Joseph's claims**

After the Michigan Supreme Court's decision in *Rouch World*, St. Joseph sued Attorney General Dana Nessel, John E. Johnson, the Executive Director of the MDCR, and Commission members Portia L. Roberson, Zenna Faraj Elhasan, Gloria E. Lara, Regina Gasco-Bentley, Anupama Kosaraju, Richard Corriveau, David Worthams, and Luke Londo in their official capacities.[4]

St. Joseph is a nonprofit corporation in the Catholic Diocese of Lansing located in St. Johns, Michigan.  (Am. Compl., R. 40, Page ID ## 667, 669.)  St. Joseph operates a church and St. Joseph Catholic School,

---

[3] Public Act 6 of 2023, is available at legislature.mi.gov/documents/2023-2024/publicact/htm/2023-PA-0006.htm.  (accessed January 12, 2024).

[4] Defendant Kosaraju is no longer serving on the Commission.  *See* https://www.michigan.gov/mdcr/commission/meet.  (accessed January 12, 2024.)

which enrolls about 200 children between kindergarten and sixth grade and employs individuals as teachers and in other staffing positions. (*Id.*, Page ID ## 659, 670.)  St. Joseph also rents its facilities, namely its gymnasium and recreational fields, and carries out parish activities and other events at the church, such as Mass and hosting weddings and wedding receptions.  (*Id.*, Page ID ## 665, 676, 689–690.)

St. Joseph alleges that the enforcement of the accommodations, education, employment, notice and publication provisions in the amended ELCRA violate the First Amendment to the U.S. Constitution by infringing on its religious beliefs.  (*Id.*, Page ID ## 662, 688, 691, 693, 694–95, 696, 702–03, 707, 709, 711, 713, 715, 716–17.)

**The District Court dismisses the complaint.**

On August 22, 2023, the District Court granted the Defendants' motion to dismiss, concluding that St. Joseph failed to "plausibly" allege facts demonstrating that (1) its intended conduct was proscribed by the ELCRA, and (2) that it was subject to "a credible threat of enforcement." (Op. & Ord., R. 58, Page ID ## 1169–1181.)

The District Court reasoned that the amended ELCRA added civil rights protections for individuals based on sexual orientation and

gender identity and expression, but "the ELCRA maintains the
provisions that allow for consideration of other laws, including those
guaranteeing religious freedoms." (Op. & Ord., R. 58, Page ID # 1170.)
Rather, the amended ELCRA in fact provides that it "will be
interpreted in accordance with other applicable laws." (*Id.*) The
District Court found that the ELCRA does not proscribe activity
otherwise protected by the First Amendment. (*Id.*, Page ID # 1173.)
And even assuming St. Joseph's proposed conduct is proscribed by
Michigan law, the court held that allegations of "subjective chill are not
an adequate substitute for a claim of a specific present objective harm
or a threat of a specific harm." (*Id.*, Page ID # 1174.)

The District Court found St. Joseph's allegations of chill were
inadequate where it failed to meet the factors set forth in *McKay v.
Federspiel*, 823 F.3d 862 (6th Cir. 2016). (*Id.,* Page ID # 1178, n.5.) The
District Court thus concluded that St. Joseph had not "demonstrated
Article III standing sufficient to invoke federal-court jurisdiction." (*Id.*,
Page ID # 1181.) As a result, the District Court opined "any decision
from [it] regarding how the statutes might apply to St. Joseph would be
advisory." (*Id.*)

## STANDARDS OF REVIEW

This Court reviews a district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing *de novo*. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007) (internal citation omitted); *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Lovely v. United States*, 570 F.3d 778, 781 (6th Cir. 2009)). Because St. Joseph's "suit was dismissed at the pleading stage, [the Court] must accept as true all material factual allegations of the complaint" and construe them in Plaintiff's favor. *Glenn v. Holder,* 690 F.3d 417, 420 (6th Cir. 2012) (quoting *White v. United States,* 601 F.3d 545, 551 (6th Cir. 2010)).

## SUMMARY OF ARGUMENT

As the District Court correctly found, the requisite injury in fact required to establish standing must be concrete and particularized, and actual or imminent. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). In the pre-enforcement context, an injury based on a perceived threat of future enforcement of a law is sufficient only if a plaintiff seeks to engage in conduct that the law arguably proscribes, and the

plaintiff shows a credible threat that the government will enforce it against the plaintiff.

But here, by its own terms, the ELCRA must be interpreted in accordance with other applicable laws, which encompasses the First Amendment, and it does not facially fail to recognize religious freedoms like those asserted by St. Joseph. Thus, the conduct in which St. Joseph allegedly seeks to engage, such as advertising for or hiring only employees that share the same religious beliefs, is not proscribed by Michigan's laws. Further, St. Joseph failed to show a credible threat of enforcement of the ELCRA by Defendants where there is no history of enforcement or a threat of enforcement against St. Joseph or any similar religious entity.

In the alternative, St. Joseph's claims were subject to dismissal based on ripeness. Like standing, ripeness requires that a plaintiff show a credible fear of enforcement in order to bring a pre-enforcement claim. But St. Joseph did not sufficiently allege any credible threat of imminent investigation or any other enforcement action against it under the ELCRA sufficient to establish its claims are ripe. Rather, St. Joseph voluntarily elected to chill its own speech and alter its own

business practices—but a chilling effect alone is insufficient. *Younger v. Harris*, 401 U.S. 37, 51 (1971). Moreover, for a claim to be ripe for review, the facts of the case must be sufficiently developed. But here, the facts are not developed as to how Defendants will interpret and apply either of the statutes to St. Joseph—a court would be left to guess at such matters. This Court should affirm.

## ARGUMENT

### I. The District Court correctly held that St. Joseph did not have standing to maintain its claims.

St. Joseph has not sufficiently pleaded that it has standing to bring its claims. Article III therefore bars federal court consideration of its claims, just as the district court concluded. Not only is the ELCRA clear that it will yield to any First Amendment protections, there has been no credible threat of enforcement of the ELCRA against St. Joseph.

### A. Standing requires a concrete, actual or imminent harm, not a generalized grievance against government conduct or a mere subjective allegation of chill.

To establish standing, St. Joseph had to show three things: (1) that it suffered an injury in fact, (2) caused by Defendants, (3) that a

judicial decision could redress. *Lujan*, 504 U.S. at 560–561. The burden of establishing standing rests with St. Joseph. *Id.* at 561. And it "bears the burden of showing that [it] has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). *See also Town of Chester, N.Y. v. Laroe Estates, Inc.*, ___ U.S. ___, 137 S. Ct. 1645, 1650 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (citation omitted). Further, "Supreme Court and Sixth Circuit caselaw have consistently held that 'the court must determine whether standing exists at the time of the filing of the complaint only.' " *Graveline v. Benson*, 992 F.3d 524, 532 (6th Cir. 2021) (cleaned up).

For purposes of standing, an injury in fact means an "invasion of a legally protected interest which is (a) 'concrete and particularized,' and (b) 'actual or imminent.' " *Daunt v. Benson,* 956 F.3d 396, 417 (6th Cir. 2020) (quoting *Lujan*, 504 U.S. at 560). In establishing an injury in fact, "[a] generalized grievance against governmental conduct is insufficient to confer standing upon a party." *Id.* at 566 (citing *United States v. Hays*, 515 U.S. 737, 743 (1995)). For this reason, a plaintiff bringing First Amendment claims "must present more than 'allegations

of a subjective chill.' There must be a 'claim of specific present objective harm or a threat of specific future harm.' " *Bigelow v. Virginia,* 421 U.S. 809, 816–17 (1975) (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). *See United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) ("All of the Supreme Court cases employing the concept of 'chilling effect' involve situations in which the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) apart from the 'chill' itself."). *See also Parsons v. United States Dep't of Just.,* 801 F.3d 701, 710 (6th Cir. 2015) (noting that "imminent" means " 'certainly impending,' in contradistinction to 'allegations of possible future injury' ") (quoting *Clapper v. Amnesty Int'l.*, 568 U.S. 398, 409 (2013)).

Further, the "chill" on First Amendment expression normally stands as the "*reason* why the governmental imposition is invalid rather than as the harm which entitles [a party] to challenge it." *Adult Video Ass'n v. United States Dep't of Just.*, 71 F.3d 563, 566 (6th Cir. 1995) (citing *United Presbyterian Church in the U.S.A.,* 738 F.2d at 1378). "Allegations of a subjective 'chill' are not an adequate substitute for a

claim of a specific present objective harm or a threat of specific future harm[.]" *Laird*, 408 U.S. at 13–14.

## B.    St. Joseph failed to sufficiently allege an injury to support pre-enforcement review.

"In a pre-enforcement challenge, whether the plaintiff has standing to sue often turns upon whether [it] can demonstrate an 'injury in fact' before the state has actually commenced an enforcement proceeding against [it]." *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014).  The Supreme Court has recognized that "[a]n allegation of future injury may" satisfy the injury-in-fact requirement if the alleged "threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.' " *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting Clapper, 568 U.S. at 408–09, 413–14, n.5). *See also Parsons*, 801 F.3d at 710.

The test for whether an injury is sufficiently imminent to support standing requires St. Joseph to establish (1) an intent to engage in a course of conduct arguably affected with a constitutional interest, (2) that this course of conduct was arguably proscribed by the ELCRA, and (3) that if St. Joseph pursued such a course of conduct, there was a

credible threat that Defendants would seek to enforce the ELCRA against it.  *Kentucky v. Yellen*, 54 F.4th 325, 336 (6th Cir. 2022) (citing *Susan B. Anthony List*, 573 U.S. at 161–64).

Based on the allegations in its complaint, St. Joseph alleged it intended to engage in a course of conduct arguably affected with a constitutional interest.  But it failed to sufficiently allege that course of conduct was arguably proscribed by the challenged statutes, and that a credible threat of prosecution existed at the time the complaint was filed.  *Graveline*, 992 F.3d at 532.

### 1.    St. Joseph's intended conduct is not arguably proscribed by the amended ELCRA.

On appeal, as it did below, St. Joseph offers a parade of possibilities based on its "highly speculative fear" and its own interpretation of the ELCRA to argue that it would be required to employ individuals who do not share St. Joseph's religious beliefs; prohibit the enforcement of its code of conduct, religious policies, and other religious requirements as to its parishioners, employees and students; restrict advertisement of its job openings, recruitment and selection of students who share its religious beliefs; and restrict rental

of its facilities and participation in public programs.  (Appellant's Br., ECF 19, Page ID ## 19–21.)  But the District Court correctly held that St. Joseph did not plausibly allege that such conduct is arguably proscribed by the ELCRA.  (Op. & Ord., R. 58, Page ID # 1173.)  That is because the ELCRA—whether before or after its recent amendment—does not proscribe activity otherwise protected by the First Amendment.

St. Joseph, as a Catholic parish and school, may generally be subject to the ELCRA as an employer, Mich. Comp. Laws § 37.2201(a), as an educational institution, Mich. Comp. Laws § 37.2401, and as a place of public accommodation to the extent its services are extended to the public, Mich. Comp. Laws § 37.2301(a).  But the ELCRA does not facially proscribe St. Joseph from exercising constitutionally protected religious rights.  This is because the ELCRA prohibits discrimination by a place of public accommodation "[e]xcept where permitted by law," which includes constitutional law.  Mich. Comp. Laws § 37.2302; *Mich. Dep't of Civil Rights ex rel. Forton v. Waterford Twp. Dep't of Parks & Recreation*, 387 N.W.2d 821 (Mich. 1986).  Further, in the employment context, discrimination based on a protected category is permissible where it is a "bona fide occupational qualification reasonably necessary

to the normal operation of the business[.]"  Mich. Comp. Laws

§ 37.2208.

And the construction provision applicable to all articles of the

ELCRA, including Article IV, which governs educational institutions,

generally provides that it "shall not be construed as preventing . . .

securing civil rights guaranteed *by law* other than the civil rights set

forth in this act."  Mich. Comp. Laws § 37.2705(1) (emphasis added). [5]

Although the term "law" in this section does not appear to have been

interpreted, it is reasonable to conclude that it, like § 2302, includes

constitutional law.  *See, e.g.*, *Champion v. Secretary of State*, 761

N.W.2d 747, 752 (Mich. App. 2008) ("[T]he use of the term 'law' here

includes constitutional provisions that would carve out a religion-based

exception to the social security number requirement.").  These

provisions requiring the ELCRA to be interpreted in conjunction with

other laws, including the constitution, were not removed from the

statute by the recent amendments.  (*See* Memorandum Op. & Ord.,

R. 58, Page ID # 1170.)

---

[5] If St. Joseph was unsure regarding the application of these exceptions
to its activities, it could have requested a declaratory ruling from the
Commission before filing suit.  Mich. Admin. Code, R. 37.20.

Therefore, as the District Court determined, while Michigan undertakes appropriate efforts to ensure its citizens are not subjected to discrimination, its laws recognize there may be exceptions to these prohibitions created by other laws, including the constitution.  (Op. & Ord., R. 58, Page ID # 1180.)  And while these provisions may not be as express as St. Joseph desires, statutory exemptions are not necessarily required for the protection of constitutional rights.  *See Emp't Div., Dep't of Human Res. Of Ore. V. Smith*, 494 U.S. 872, 890 (1990) ("[T]o say that a non-discriminatory religious-practice exemption is permitted, or even that it is desirable, is not to say that it is constitutionally required, and that the appropriate occasions for its creation can be discerned by the courts.").

Moreover, as the District Court observed, Michigan caselaw confirms the exemption of religious freedoms when evaluating civil rights protections.  (Op. & Ord., R 58, Page ID ## 1171–74.)[6]  There are numerous decisions demonstrating Michigan considers religious freedoms and provides exemptions for religious practice under the

---

[6] Michigan's Constitution and the ELCRA recognize "religion" as both a protected constitutional and civil right.  *See* Mich. Const. 1963, Art. 1, § 2, Art. 5, § 29, Mich. Comp. Laws § 37.2102.

ELCRA.  *See e.g., Porth v. Roman Cath. Diocese*, 532 N.W.2d 195, 200 (Mich. Ct. App. 1995); *Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233, 238 (Mich. Ct. App. 1988); *Weishuhn v. Cath. Diocese*, 756 N.W.2d 483, 488–89, 500 (Mich. Ct. App. 2008); *McLeod v. Providence Christian Sch.*, 408 N.W.2d 141, 151 (Mich. Ct. App. 1987).  As the District Court noted, Michigan courts have determined that the ministerial exception, a "nonstatutory, constitutionally compelled exception to the application of employment discrimination and civil rights statutes to religious institutions and their 'ministerial' employees," "generally bars inquiry into a religious institution's underlying motivation for a contested employment decision."  (Op. & Ord., R 58, Page ID # 1171, citing *Weishuhn*, 756 N.W.2d at 486.)  These cases demonstrate the ELCRA is—indeed must be—interpreted in conjunction with the First Amendment protections afforded religious entities.[7]

Notwithstanding the exemptions provided for by statute and in Michigan law, St. Joseph argues that any complaint filed against it, in

---

[7] In *Our Lady of Guadalupe School v. Morrissey-Berry*, 140 S. Ct. 2049, 2060 (2020), the Supreme Court observed that "[a]mong other things, the Religion Clauses protect the right of churches and other religious institutions to decide matters of faith and doctrine without government intrusion."

and of itself, violates its religious freedoms, despite courts having considered religious freedoms in conjunction with Michigan's anti-discrimination provisions.  (Appellant's Br., ECF 19, Page ID ## 34–35.) There is no authority to support the contention that a religious entity's religious rights provide it with complete immunity from suit, investigation, etc., as religious freedoms must be weighed against governmental interests based on the particular facts of each case. *Assemany,* 434 N.W.2d at 236–37.  The Supreme Court has expressly held that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Emp't Div., Dep't of Human Res. Of Ore.,* 494 U.S. at 879 (cleaned up).

St. Joseph relies upon *NLRB v. Catholic Bishop of Chicago*, to stand for the proposition that governmental inquiry in and of itself violates its First Amendment rights.  440 U.S. 490 (1979).  However, the *Catholic Bishop* case was specific to whether the National Labor Relations Board could assert jurisdiction over a religious school's lay teachers.  In *Catholic Bishop*, the Court noted that a statute "ought not

23

be construed to violate the Constitution if any other possible construction remains available." *Id.* at 500. The Court's test was "whether the Board's exercise of its jurisdiction here would give rise to serious constitutional questions." *Id.* at 501. The Supreme Court's concerns in *Catholic Bishop* do not exist here where the ELCRA provides for consideration of First Amendment rights.

Here, the District Court correctly held that the ELCRA does not fail to recognize religious freedoms like those asserted by St. Joseph. (Op. & Ord., R. 58, Page ID # 1181.) And the "mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." (*Id.,* Page ID # 1174, citing *Nat'l Rifle Ass'n of Am. V. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) (citation omitted).)

### 2. St. Joseph failed to sufficiently allege a credible threat of enforcement under the ELCRA.

Again, to avoid dismissal, St. Joseph had to demonstrate it had standing at the time it *filed* its complaint. *Graveline*, 992 F.3d at 532. Even so, since the issuance of the interpretive statement five years ago and the *Rouch World* decisions over a year ago, St. Joseph still cannot

24

identify any pending complaint, investigation, charge or prosecution against it.  Thus, St. Joseph's claims that it faces a credible threat of enforcement warranting pre-enforcement review are wholly dependent upon speculation (1) that a complaint will be filed against it, and (2) about how the statutory language will be applied or if it will be applied against it.  St. Joseph simply presumes, without any credible evidence, that Defendants will not appropriately consider applicable religious exemptions if a complaint is filed against it.  It is worth noting that the Attorney General has no statutory authority to enforce the ELCRA, as the MDCR and Commission Defendants have express authority to enforce the ELCRA.  Mich. Comp. Laws § 37.2601 *et seq*.  So, there is no conceivable threat of enforcement by the Attorney General.

Again, "allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm" for purposes of establishing an injury-in-fact.  *Laird,* 408 U.S. at 13–14.  The "chilling effect" associated with a potentially unconstitutional law being " 'on the books' " is insufficient to "justify federal intervention" in a pre-enforcement action.  *Whole*

*Woman's Health v. Jackson*, ___ U.S. ___, 142 S. Ct. 522, 538 (2021) (quoting *Younger*, 401 U.S. at 51). But a credible threat of enforcement may exist where a plaintiff alleges a subjective chill on protected speech *and* can point to indicators of imminent enforcement, such as those discussed in *McKay v. Federspiel*, 823 F.3d at 869. *Fisher v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022). *See also Plunderbund Media, LLC v. DeWine*, 753 F. App'x 362, 366–67 (6th Cir. 2018).

In *McKay*, this Court identified factors to determine whether a threat of enforcement is credible: (1) a history of past enforcement against the plaintiff or others; (2) enforcement warning letters sent to the plaintiff regarding their specific conduct; (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing members of the public to initiate enforcement actions; and (4) the defendants refusal to disavow enforcement of the challenged statute against a particular plaintiff. *McKay*, 823 F.3d at 869. Some combination of these factors is required. *Id.*

St. Joseph argues that as long as the statute implicates its conduct, it has established standing. (Appellant's Br., ECF 19, Page ID # 38.) However, St. Joseph's argument is essentially that the ELCRA

should be evaluated based on its general broad prohibitions, and this Court should ignore any of its explicit exemptions or limitations as to its applicability.  Cases upon which St. Joseph relies involved different statutes that specifically proscribe the conduct at issue.  For example, *Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447 (2014) involved a statute that proscribed the very specific conduct that would be applicable to plaintiff, a lawyer who wanted to campaign for judicial office.  The plaintiff wanted to publicly endorse candidates, personally solicit campaign funds, and receive campaign contributions more than 120 days before the primary, which were violations of the challenged law.  *Id.* at 452.  The court found that the plaintiff at issue wanted to engage in conduct that was directly proscribed by the statute.  *Id.* at 450.  It was these outright prohibitions on the plaintiff's speech that made enforcement sufficiently imminent. St. Joseph also relies on *Turtle Island Foods, S.P.C. v. Strain,* 65 F.4th 211 (2023), which involved a plaintiff who made plant-based meat substitutes where they used meat terms on the label.  The statute proscribed the mislabeling of food, and the Court found that the statute arguably proscribed the plaintiff's conduct.  *Id.* at 217.  In making this

27

finding, the Court noted that the statute did not contain an explicit safe harbor for plant-based meat products. *Id.* at 218. Unlike these cases, the ELCRA provides broad prohibitions against discrimination and accounts for religious freedoms.

The District Court correctly determined upon review that the *McKay* factors did not weigh in its favor. (Op. & Ord., R. 58, Page ID #1181.)

### a. There is no history of past enforcement of the ELCRA against St. Joseph.

Regarding a history of past enforcement, there is no dispute that no Defendant has taken any action to enforce the ELCRA against St. Joseph either before or after the filing of its complaint(s). Likewise, at the time Plaintiff filed its second amended complaint, no Defendant had taken any action to enforce the law against a similarly situated

religious entity based on the entity's intent to engage in conduct similar to that proposed by St. Joseph.[8]

This makes sense because St. Joseph filed its complaint shortly after the *Rouch World* decision—before its effect had any time to percolate. And recall that *Rouch World* left unanswered how its expansion of the rights protected by the ELCRA intersected with religious freedoms. The MDCR and Commission Defendants have yet to consider or apply the ELCRA's protections from discrimination based on sexual orientation and gender identity to a complaint against an entity like St. Joseph and assess First Amendment religious protections. St. Joseph's speculation that Defendants will apply the ELCRA in an unconstitutional manner is just that—speculation. *See*

---

[8] St. Joseph asks this Court to take judicial notice of subsequently filed administrative complaints by private citizens—not Defendants herein. This Court has authority to take judicial notice of "a fact that is not subject to reasonable dispute" either because it "is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While the filing of a complaint with the MDCR and subsequent filing of a charge may be judicially noticed, St. Joseph is improperly relying upon the substance these documents for this Court to assess whether this supports its standing which goes beyond judicial notice. *Davis v. City of Clarksville,* 492 Fed. Appx. 572, 578 (6th Cir. 2012).

29

*Doe v. Univ. of Mich.*, 78 F.4th 929, 944 (6th Cir. 2023) (noting "the Supreme Court has averred its 'reluctan[ce] to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment' ") (quoting *Clapper*, 568 U.S. at 413).

Not surprisingly then, the District Court observed that St. Joseph did not cite any Michigan cases interpreting the ELCRA as prohibiting a religious employer who meets the bona fide occupational qualification (BFOQ) criteria from asking prospective employees about whether they can follow and effectively communicate certain beliefs; seeking, recruiting, and hiring employees who agree with certain religious beliefs; or posting employment opportunities that indicate a desire to hire employees who share certain beliefs. (Op. & Ord., R. 58, Page ID # 1178.) St. Joseph simply did not allege any history of past enforcement of the ELCRA by the Defendants or their predecessors in a manner relevant to the claims made here.

The cases cited by Plaintiff do not strengthen its claims. For example, in *Block v. Canepa*, 74 F.4th 400, 409–11 (6th Cir. 2023), unlike the ELCRA, Ohio's statute proscribed the very conduct in which the plaintiff wished to engage, and Ohio had a history of enforcement of

that statute for the same, specific conduct.  But here, Plaintiff identified

no evidence of past enforcement against a religious entity for the

conduct in which St. Joseph wished to engage, and perhaps most

importantly, there was no indication in *Block* that Ohio's statute

requires consideration of other laws.  The ELCRA, however, on its face

and as applied, must be construed in conjunction with other laws.  (Op.

& Ord., R. 58, Page ID # 1181.)

Likewise, *Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir.

2019), is distinguishable.  *Speech First* involved a facial challenge to

definitions of bullying and harassment in a university policy and

involved a response team's actions that were found to have constituted

an "implicit threat of punishment and intimidation to quell speech." *Id.*

at 765.  The conduct at issue, bullying and harassment, *were* the

explicit conduct the university policy prohibited.  Unlike *Speech First*,

St. Joseph's complaint did not identify a religious entity subject to an

adverse action—by any Defendant—because of conduct in which it

intended to engage.  (*Id.*)

31

### b.    There are no non-speculative threats of enforcement of the ELCRA.

Turning to the threat of enforcement factor, no warning letters or threats of enforcement have been issued or made to St. Joseph by any Defendant under the ELCRA.  St. Joseph failed to allege facts demonstrating that any Defendant was poised to initiate an enforcement action against it.

Plaintiff's reliance upon amicus briefs joined by the Attorney General or a resolution passed by the Commission on behalf of LGBTQ+ anti-discrimination efforts do not show a "clear threat of prosecution" against St. Joseph.  Again, the Attorney General does not enforce the ELCRA.  (Op. & Ord., R. 58, Page ID # 1179.)  Further, the Commission's enforcement of the ELCRA is pursuant to constitutional and statutory mandate.  *See* Mich. Const. 1963, Art. V, § 29.  The fact that the Commission is generally charged with prohibiting discrimination does not mean it will not consider a religious entity's constitutionally protected religious freedoms.

### c. The provisions of the ELCRA do not make enforcement against St. Joseph easier or more likely.

With regard to the third *McKay* factor, the District Court concluded that while private individuals are statutorily empowered to file an administrative complaint against St. Joseph under the ELCRA, the ELCRA also provides that such a complaint may not be premised on discrimination that is "permitted by law." Mich. Comp. Laws § 37.2302(a). (Op. & Ord., R. 58, Page ID # 1180.) And although private individuals can file a complaint, this does not mean a charge will necessarily ensue. The MDCR has discretion determine whether there are sufficient grounds to issue a charge. Mich. Admin. Rule 37.6. To the extent this Court determines this factor weights against Defendants, all of the *McKay* factors are not required to be met—only some combination of these factors is required. *McKay*, 823 F.3d at 869.

### d. The inability to disavow enforcement of the ELCRA does not weigh in favor of standing here.

Finally, St. Joseph relies heavily upon Defendants' inability to disavow enforcement of the ELCRA. But this reliance is misplaced.

33

First, disavowal is not a requirement for a finding of lack of standing. *McKay* requires that a combination of the factors be met. 823 F.3d at 869. Even if the "disavowal" factor weighs in favor of St. Joseph, the others plainly do not. And second, Defendants, as state officers, cannot generally disavow application of the ELCRA where it broadly prohibits discrimination. Mich. Comp. Laws, § 37.2101, *et seq.*; Mich. Comp. Laws § 750.146.

While entities asserting a religious freedom may be exempted from the statutory prohibitions as permitted by law, religious exemptions are fact dependent. It would be impossible for Defendants to disavow application of statutes as broad as the ELCRA to any religious entity where the religious freedom inquiry is fact dependent. The District Court agreed. (Op. & Ord., R. 58, Page ID # 1181) (citing *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 174 (6th Cir. 2022) (determining that the fact that the police department had not "disavowed enforcement" of its Facebook Rule "does nothing to show that [the plaintiff] plans to engage in speech that might arguably fall within the rule").)

St. Joseph alleged no facts or evidence demonstrating that its religious freedoms will be denied where the ELCRA expressly provides it is to be construed with other laws; and it is speculative to anticipate that Defendants will pursue a claim or charge against St. Joseph. Plaintiff cites to cases in support of pre-enforcement standing that are not on point. Rather, the cases involve statutes that proscribe very specific conduct, which courts found created a credible threat.

For example, in *Green Party of Tenn. V. Hargett,* 791 F.3d 684, 690 (6th Cir. 2015), the statute specifically required a minor political party to file an affidavit that it did not advocate the overthrow of local, state, or national governments by force or violence before its nominees are placed on the ballot. The statute proscribed specific conduct applicable to specific entities, and the state refused to disavow. *Id.* At 696.

Here, the acts broadly prohibit discrimination, but the statutes do not specify these prohibitions apply to religious entities regardless of the constitutional freedoms of which they may avail themselves. The ELCRA provides that religious entities have an exemption in the employment context. Mich. Comp. Laws § 37.2208. And religious

educational institutions have an exemption permitting admission of students based upon religion.  Mich. Comp. Laws § 37.2403.  The ELCRA also specifies it is applicable, as to public accommodations, "except where permitted by law."  Mich. Comp. Laws § 37.2208.  As a result, this case is unlike *Hargett*.

Similarly, *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022), is also distinguishable.  There, the statute "explicitly ban[ned]" internet ordained ministers from solemnizing a marriage, which is the very conduct in which the plaintiffs sought to engage.  *Id*. at 1034.  The ELCRA does not contain a similar explicit ban on the activities at issue in this case.  Rather, it generally proscribes discrimination *unless permitted by law*.

When taken together, the *McKay* factors do not weigh in favor of St. Joseph.  As a result, the District Court properly determined that Plaintiff failed to show a credible threat of enforcement.  For the same reasons, St. Joseph failed to show a "substantial risk" or harm.  *Susan B Anthony List,* 573 U.S. at 158 (cleaned up).

While St. Joseph argues on appeal that Michigan aggressively enforces its civil rights laws, and, as a result, St. Joseph faces a future

36

threat of enforcement, that inquiry is too broad. The issue is whether Defendants will fail to consider established religious freedoms in applying Michigan's civil rights laws to St. Joseph. The fact that the MDCR may investigate an administrative complaint or bring a charge of discrimination based on sexual orientation or gender identity against a secular entity or one that does not claim a religious exemption is irrelevant to St. Joseph's claims. Defendants have not denied that they have interpreted the ELCRA to include protection for gender identity and sexual orientation. But the issue is whether, in the application of this protection, Defendants have or will refuse (or there is a substantial risk that they will refuse) to consider religious freedoms—which they have not and will not because they cannot do so, by law.

Finally, St. Joseph's concerns about Defendants' position or representations regarding possible limitations to religious freedoms are also too broad. St. Joseph erroneously intimates that Defendants are prosecuting religious entities who declined to provide services due to religious beliefs. But the Attorney General does not enforce the ELCRA. And, to the extent that the MDCR has administrative complaints from citizens, the District Court properly found that the

scope of an investigation, any determination that actionable discrimination occurred, and any determination regarding grounds to issue a charge is dictated by the facts and applicable laws, including constitutional law which, again, the ELCRA incorporates.  (Op. & Ord., R. 58, Page ID # 1180.)  St. Joseph alleged no facts or evidence suggesting that the MDCR will not consider religious freedoms in the course of an administrative proceeding.

There is no First Amendment violation "in the absence of some actual or threatened imposition of governmental power or sanction." *Penthouse Int'l, Ltd. V. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991). Here, St. Joseph has not shown that it faces imminent investigation or prosecution under the ELCRA or that it has been threatened with such actions.  Further, the ELCRA is expressly to be construed with other laws, which includes religious protections.  On these facts, St. Joseph failed to sufficiently allege an actual or imminent injury traceable to any action of Defendants.  This Court should thus affirm the District Court's dismissal for lack of standing.

II.    **St. Joseph's claims are not ripe for review because it has not demonstrated a credible threat of enforcement of the ELCRA against it.**

Alternatively, should this Court determine that St. Joseph possesses the requisite standing, the District Court's decision to dismiss should be affirmed where the claims are not ripe.  In its opinion, the District Court did not separately rule on ripeness.  (Op. & Ord., R. 58, Page ID # 1166, n2.)  But, based on its analysis that St. Joseph lacked standing, the court noted that its "analysis would likely lead to the same result," i.e., that its claims are unripe.  (*Id.*)  This Court need not address ripeness either if it agrees with the District Court that St. Joseph lacks standing, which it does.  Nevertheless, St. Joseph's claims are not ripe for review for the same reasons they lack standing.

A.    **For a claim to be ripe, the factual record must be sufficiently developed, and a credible threat of harm must exist, and the denial of review must create a hardship.**

Ripeness "shares a foundation in Article III's case-and-controversy requirement [of standing]," *Miller v. City of Wickliffe*, 852 F.3d 497, 503 (6th Cir. 2017), and often "boil[s] down to the same question[,]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007).

39

The ripeness doctrine is "designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505, 509 (6th Cir. 2006) (citation omitted). Questions of ripeness arise in those cases "'anchored in future events that may not occur as anticipated, or at all.'" *Id.* (quoting *Nat'l Rifle Ass'n of Am.*, 132 F.3d at 294).

In order to establish that a claim is "ripe for judicial resolution, [courts] ask two basic questions: (1) is the claim 'fit[ ] . . . for judicial decision' in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is 'the hardship to the parties of withholding court consideration'?" *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). Thus, while "the ripeness requirement is somewhat relaxed in the First Amendment context, there nonetheless must be a credible fear of enforcement."

*Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 479 (2d Cir. 1999)). St. Joseph failed to meet these requirements.

### 1.   St. Joseph did not allege a credible threat of enforcement under the ELCRA.

Again, a chilling effect "has never been considered a sufficient basis, in and of itself, for prohibiting state action."  *Younger*, 401 U.S. at 51; *see also Marchi*, 173 F.3d at 479 (holding that anti-abortion activists' as-applied challenge to Freedom of Access to Clinic Entrances Act was not ripe for review because they did not show that the alleged "pattern of activity" would ever come to pass).  Instead, courts "look at each case to determine the consequences of staying . . . [its] hand." *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010).

For the same reasons discussed in Argument I.B.2., St. Joseph failed to sufficiently allege a credible threat of enforcement for purposes of establishing ripeness.  But briefly, since the Commission's adoption of its interpretive statement in 2018 and the *Rouch World* decisions, none of the disputed provisions in the ELCRA have been interpreted as St.

Joseph speculates. And none of the Defendants have directly, or even indirectly, interfered with St. Joseph's employment and educational decisions, or infringed on its religious beliefs, as an employer or educational institution.

Here, although St. Joseph has advised that it is required to implement its policies and procedures in accordance with a person's "God-given biological sex," that students and parents must "conduct themselves in accord with their God-given biological sex," and requires employees to comply with Catholic teaching on human sexuality and gender, it has not sufficiently alleged an imminent threat of investigation or prosecution because of these religious beliefs. (Appellant's Br., ECF 19, Page ID ## 20–21.)

There is no indication that St. Joseph will be targeted for disfavored treatment or that its speech or association will be chilled. The complaint contained only abstract allegations anchored in future events that might not occur at all—or might occur differently than St. Joseph anticipates.

The MDCR is charged with receiving, initiating, conciliating, adjusting, disposing of, issuing charges, and holding hearings on

42

complaints alleging a violation of the ELCRA.  Mich. Comp. Laws

§ 37.2602(c).  But, in its complaint, St. Joseph did not allege that a

complaint had been filed against it with the MDCR.  Nor did the

complaint allege that anyone has threatened to file such a complaint.

Additionally, despite the complaint's many paragraphs outlining the

burdens of the MDCR's investigatory process (Amended Compl., R. 40,

Page ID ## 704–06), St. Joseph has not claimed the MDCR has *sua*

*sponte* or responsively initiated or threatened to initiate an

investigation of St. Joseph in the wake of the Michigan Supreme Court's

decision in *Rouch World*, *LLC*.

In this case, St. Joseph simply speculates about how Defendants

will interpret the law and apply it to an undetermined set of facts in the

context of a future administrative complaint that may never be filed.

*See Doe,* 78 F.4th at 944–45 (concluding claim was not ripe for

adjudication where disciplinary investigation had not concluded at the

time the complaint was filed and the outcome of the investigation may

not have occurred as the plaintiff feared).

St. Joseph simply failed to sufficiently plead in its complaint a

credible threat of enforcement under the ELCRA.

43

### 2.    St. Joseph's claims do not arise out of sufficiently concrete facts to support judicial review.

Here, the facts as alleged are not sufficiently concrete to allow for adjudication. *See Marchi*, 173 F.3d at 478 (finding claim unripe when it "would be forced to guess at how [the defendant] might apply the . . . directive"). In the employment context, St. Joseph's request for relief would force the District Court to speculate on things such as whether it would be granted a BFOQ exemption[9] under the ELCRA if it exercised its option to apply for one—which it has not done. *See* Mich. Comp. Laws § 37.2208. The complaint acknowledges that the MDCR may make "individualized exemptions" for employers. (Amended Compl., R. 40, Page ID # 698.)

---

[9] Of note, Plaintiff erroneously notes that they are only entitled to an employment exemption under the BFOQ provision of the ELCRA if Michigan first decides it is necessary. (Appellant's Br., ECF 19, Page ID # 42.) The failure or refusal to obtain a BFOQ does not mean the employer does not have an exemption, it only means that the employer will have the burden of establishing the religious exemption if challenged. Mich. Comp. Laws § 37.2208.

### 3.    St. Joseph has not shown sufficient hardship absent judicial relief at this stage.

At this time, there is no evidence that St. Joseph will suffer a hardship if judicial review is denied.  Given that no action has been taken against it, no investigation launched or threatened, no complaint filed against it with the MDCR, St. Joseph's alleged hardships are too speculative to support judicial review.

Contrary to claims in the complaint, the ELCRA has not been definitively interpreted to prohibit the kinds of activities St. Joseph alleges to be at risk.  Again, it has only been a little over a year since the issuance of *Rouch World* and the amendments to the ELCRA are not yet effective.  In the education arena, for example, St. Joseph cites no Michigan cases interpreting Michigan law as prohibiting a religious educational institution from inquiring about prospective and current students religious beliefs; recruiting and selecting students that share its religious beliefs; enforcing its policies and religiously-motivated conduct standards; requiring parents and/or legal guardians of students to uphold the religious mission; or, advertising and/or publishing materials about its religious-based expectations.  (Am. Compl., R. 40, Page ID ## 696–97, 702–03.)  In the employment arena, St. Joseph cites

no Michigan cases interpreting the ELCRA as prohibiting a religious employer who qualifies for an exemption from asking prospective employees about whether they can abide by certain beliefs; seeking, recruiting, and hiring employees who agree with certain religious beliefs; requiring hires comply with certain religious beliefs; or posting employment opportunities that indicate a desire to hire employees who share certain beliefs.  (*Id.*, Page ID ## 694–96.)  And, in the accommodations arena, St. Joseph cites to no Michigan cases interpreting the ELCRA as prohibiting it from requiring that its facilities be used in accordance with its religious beliefs; requiring it to make statements contrary to its religious teachings; or disallowing it from publishing its religious teachings.  (*Id.*, Page ID ## 689–693.)  The absence of precedent addressing religious exemptions under the ELCRA post-*Rouch World* further lessens the possibility of an impending investigation and underscores the prematurity of this lawsuit.

St. Joseph can continue to advance its religious mission through its education, employment, and public accommodations policies and practices without losing its opportunity to file a future lawsuit if specific action is taken against it.  In the meantime, it can await a future case

46

where the Michigan courts grapple with the question the Michigan Supreme Court left unanswered in *Rouch World*.  And if St. Joseph is unsure of how the Commission will apply the *Rouch World* or other precedents, it can request a declaratory ruling from the Commission. *See* Mich. Admin. Code, R 37.20.  Finally, nothing is preventing St. Joseph from filing an application for a BFOQ exemption under Mich. Comp. Laws § 37.2208, other than its mere prediction that the process will be futile.

Any hardship that St. Joseph is experiencing now is of its own making—not Defendants'—and provides no grounds for reviewing its otherwise unripe claims.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, State Defendants respectfully request that this Court affirm the decision of the District Court granting State Defendants' motion to dismiss.

Respectfully submitted,

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General
Attorney for Defendants-Appellees
Civil Rights & Elections Division
P. O. Box 30726
Lansing, MI 48909
(517) 335-7659
Meingasth@michigan.gov

*s/Kimberly K. Pendrick*
Kimberly K. Pendrick (P60348)
Assistant Attorney General
Counsel of Record
Attorney for Defendants-Appellees
Civil Rights & Elections Division
3030 W. Grand Blvd., 10th Floor
Detroit, Michigan 48202
313.456.0067
pendrickk@michigan.gov

Dated:  January 19, 2024

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 13,000 words.  This document contains 8,927 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Century Schoolbook.

*s/Kimberly K. Pendrick*
Kimberly K. Pendrick (P60348)
Assistant Attorney General
Counsel of Record
Attorney for Defendants-
Appellees
Civil Rights & Elections Division
3030 W. Grand Blvd., 10th Floor
Detroit, Michigan 48202
313.456.0067
pendrickk@michigan.gov

## CERTIFICATE OF SERVICE

I certify that on January 19, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

*s/Kimberly K. Pendrick*
Kimberly K. Pendrick (P60348)
Assistant Attorney General
Counsel of Record
Attorney for Defendants-
Appellees
Civil Rights & Elections Division
3030 W. Grand Blvd., 10th Floor
Detroit, Michigan 48202
313.456.0067
pendrickk@michigan.gov

50

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendants-Appellees, per Sixth Circuit Rule 28(a), 28(a)(1)-(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Second Amended Complaint | 04/07/2023 | R. 40 | 658-799 |
| Defendants' Brief in Support of Motion to Dismiss | 05/05/2023 | R. 44 | 806-867 |
| Opinion and Order | 08/22/2023 | R. 58 | 1156-1182 |
| Judgment | 08/22/2023 | R. 59 | 1183 |