No. 23-1860

# In the United States Court of Appeals for the Sixth Circuit

ST. JOSEPH PARISH ST. JOHNS,

*Plaintiff-Appellant,*

*v.*

DANA NESSEL, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF MICHIGAN; JOHN E. JOHNSON, JR., IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE MICHIGAN DEPARTMENT OF CIVIL RIGHTS; PORTIA L. ROBERSON, ZENNA FARAJ ELHASON, GLORIA E. LARA, REGINA GASCO-BENTLEY, ANUPAMA KOSARAJU, RICHARD CORRIVEAU, DAVID WORTHAMS, AND LUKE R. LONDO, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE MICHIGAN CIVIL RIGHTS COMMISSION,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Western District of Michigan Southern Division, No. 1:22-cv-1154

## PLAINTIFF-APPELLANT'S REPLY BRIEF

WILLIAM J. HAUN
LORI H. WINDHAM
NICHOLAS R. REAVES
MICHAEL J. O'BRIEN † *
RICHARD C. OSBORNE *
THE BECKET FUND
    FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
    Suite 400
Washington, DC 20006
(202) 955-0095
*whaun@becketlaw.org*

† Sixth Circuit admission pending.

* Not a member of the D.C. Bar; admitted in Louisiana and New Jersey respectively. Supervised by licensed D.C. Bar members.

# TABLE OF CONTENTS

**Page(s)**

**Cases**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ...............................................................................................1

ARGUMENT ......................................................................................................4

I.  Under the newly amended ELCRA, St. Joseph has standing and its claims are ripe. ..............................................................4

    A. St. Joseph's conduct is arguably affected with a constitutional interest. ........................................................................5

    B. The new ELCRA arguably proscribes St. Joseph's conduct. ...........5

        1.  Michigan concedes all that is necessary to meet this test. .........5

        2.  To avoid its concession, Michigan conflates standing with the merits. ..........................................................................8

    C. St. Joseph faces a credible threat of enforcement. ........................15

        1.  Michigan refuses to disavow enforcement, so a credible threat is presumed..................................................................15

        2.  Even if the *McKay* factors apply, St. Joseph meets them. .......17

    D. Declaratory and injunctive relief are appropriate remedies.........27

CONCLUSION ................................................................................................27

CERTIFICATE OF COMPLIANCE....................................................................28

CERTIFICATE OF SERVICE..............................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*281 Care Comm. v. Arneson*,
766 F.3d 774 (8th Cir. 2014).......................................................7

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979).................................................................18-19

*Barber v. Charter Twp. of Springfield, Michigan*,
31 F.4th 382 (6th Cir. 2022) .......................................... 4, 8, 14

*Block v. Canepa*,
74 F.4th 400 (6th Cir. 2023) .................................... 16-17, 21

*Bostock v. Clayton County*,
140 S. Ct. 1731 (2020)...........................................................23

*Braidwood Management, Inc. v. EEOC*,
70 F.4th 914 (5th Cir. 2023) .............................. 21, 23, 24

*Brown v. Kemp*,
86 F.4th 745 (7th Cir. 2023) ...........................................7

*Cal. Trucking Ass'n. v. Bonta*,
996 F.3d 644 (9th Cir. 2021)...........................................18

*Carey v. Wolnitzek*,
614 F.3d 189 (6th Cir. 2010)...........................................7

*Carson v. Makin*,
596 U.S. 767 (2022)...........................................................12

*Clark v. Martinez*,
543 U.S. 371 (2005)..........................................................9-10

*Conlon v. InterVarsity Christian Fellowship*,
777 F.3d 829 (6th Cir. 2015)...........................................11

*Dakotans for Health v. Noem*,
52 F.4th 381 (8th Cir. 2022) ...........................................5

*Dambrot v. Cent. Mich. Univ.*,
  55 F.3d 1177 (6th Cir. 1995)......................................................... 10, 13

*Davis v. Colerain Township*,
  51 F.4th 164 (6th Cir. 2022) .............................................................. 20

*Fed. Election Comm'n v. Cruz*,
  596 U.S. 289 (2022).................................................................... 12, 14

*Fellowship of Christian Athletes v. San Jose Unified Sch.
  Dist. Bd. of Educ.*,
  82 F.4th 664 (9th Cir. 2023) ............................................................. 11

*Fischer v. Thomas*,
  52 F.4th 303 (6th Cir. 2022) ............................................................. 17

*Mich. Dep't of C. R. ex rel. Forton v. Waterford Twp. Dep't of
  Parks & Recreation*,
  387 N.W.2d 821 (Mich. 1986) .............................................................. 9

*Franciscan All., Inc. v. Becerra*,
  47 F.4th 368 (5th Cir. 2022) ........................................................ 19-20

*Green Party of Tenn. v. Hargett*,
  791 F.3d 684 (6th Cir. 2015)............................................................. 20

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v.
  EEOC*,
  565 U.S. 171 (2012)......................................................................... 12

*Kentucky v. Yellen*,
  54 F.4th 325 (6th Cir. 2022) ..................................................... *passim*

*McKay v. Federspiel*,
  823 F.3d 862 (6th Cir. 2016)................................................... 17, 24, 25

*NRA v. Magaw*,
  132 F.3d 272 (6th Cir. 1997)............................................................. 15

*Ohio Citizen Action v. City of Englewood*,
  671 F.3d 564 (6th Cir. 2012).........................................................22-23

*Online Merchs. Guild v. Cameron*,
  995 F.3d 540 (6th Cir. 2021)............................................ 18, 24, 25, 26

*Our Lady of Guadalupe v. Morrissey-Berru*,
  140 S. Ct. 2049 (2020).................................................... 11-12

*Picard v. Magliano*,
  42 F.4th 89 (2d Cir. 2022)........................................... 4, 7, 10

*Platt v. Bd. of Comm'rs on Grievances and Discipline of Ohio*
  *Sup. Ct.*,
  769 F.3d 447 (6th Cir. 2014)....................................... 4, 6, 16, 17

*Plunderbund Media, L.L.C. v. DeWine*,
  753 F. App'x 362 (6th Cir. 2018)................................... 16, 18

*Rouch World, LLC v. Dep't of C.R.*,
  987 N.W.2d 501............................................................23-24

*Speech First, Inc. v. Schlissel*,
  939 F.3d 756 (6th Cir. 2019)............................. 20-21, 22, 25

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)................................................... *passim*

*Turtle Island Foods, S.P.C. v. Strain*,
  65 F.4th 211 (5th Cir. 2023) .......................................7

*Universal Life Church Monastery Storehouse v. Nabors*,
  35 F.4th 1021 (6th Cir. 2022) .....................................16

*Virginia v. Am. Booksellers Ass'n, Inc.*,
  484 U.S. 383 (1988)....................................................15

*Vitagliano v. County of Westchester*,
  71 F.4th 130 (2d Cir. 2023)..........................................19

*Winter v. Wolnitzek*,
  834 F.3d 681 (6th Cir. 2016).........................................5

iv

**Statutes**

MCL § 37.2602.................................................................................... 25

MCL § 37.2705............................................................................... 12-13

MCL § 37.2801.................................................................................... 25

**Other Authorities**

U.S. Const. art. 6, cl. 2 ..................................................................... 13

## INTRODUCTION

St. Joseph Catholic parish seeks to live out its Catholic beliefs in word and deed—as a parish and school employer, in running its religious school, and as a member of the St. Johns, Michigan community. These religious commitments are why St. Joseph brought this pre-enforcement challenge to the newly amended Elliott-Larsen Civil Rights Act ("ELCRA"). This new law makes all of St. Joseph's religious hiring, parish and school governance, and public activity susceptible to lawsuits by either Michigan or private citizens, provides no corresponding religious liberty protections, and Michigan won't disavow enforcing the law against any religious entity. Those facts are undisputed. As they satisfy the Supreme Court's three-part test for pre-enforcement standing in *SBA List*, the district court must be reversed.

Michigan's response concedes all that is necessary to reverse the district court and find that St. Joseph has pre-enforcement standing. First, Michigan concedes that St. Joseph is engaged in constitutionally protected activity. That satisfies *SBA List* step one. Second, Michigan concedes that the new ELCRA's prohibitions are "general," "broad," and "generally subject" St. Joseph to liability "as an employer," "as an educational institution," "and as a public accommodation to [some] extent." This satisfies *SBA List* step two, because a law "arguably" proscribes a plaintiff's conduct when it "sweeps broadly and covers the subject matter of [the plaintiff's] intended" religious exercise. *Susan B.*

*Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014). And Michigan concedes *SBA List* step three, that St. Joseph faces a credible threat of enforcement, because it says it would be "impossible to disavow application" of "the ELCRA to any religious entity."

Ten other circuits would presume a credible threat from Michigan's refusal to disavow enforcement of a newly enacted law. The presumption should apply here too. But even if it does not, Michigan also concedes that private citizens can enforce the ELCRA. Combine this concession with Michigan's refusal to disavow enforcement, along with its history of enforcing the ELCRA's prohibitions—including against religious entities—and St. Joseph also satisfies this Court's optional *McKay* factors. That is enough to reverse the district court and reinstate St. Joseph's ripe claims.

Michigan seeks to escape its *SBA List* concessions by distorting the "arguably" proscribed inquiry (step two) and the credible threat of enforcement inquiry (step three). On step two, Michigan promises to "construe" the new ELCRA so that it "does not proscribe activity otherwise protected by the First Amendment." But litigation promises don't defeat pre-enforcement standing. And here, Michigan's promise conflates standing (where courts inquire if the plaintiff's conduct is *arguably* proscribed) with the merits (where courts determine if the plaintiff's conduct is *actually* proscribed). Every law must be construed not to violate the Constitution. If that were enough to defeat pre-

enforcement standing, there would never be pre-enforcement standing. The right way to avoid that wrong result is to recognize that how Michigan will "construe" the ELCRA in practice is for the merits stage— not the justiciability stage, where St. Joseph's claims must be accepted as valid. Under *SBA List*, nothing else is required.

On step three, Michigan invokes this Court's *McKay* factors to excuse the supposed "impossibil[ity]" of disavowing enforcement against St. Joseph. "[D]isavowal," says Michigan, "is not require[d]" to find a "lack of standing" under *McKay*. Reading *McKay* that way would split with ten other circuits, where a government's refusal to disavow enforcement of a newly enacted law results in a presumed credible threat of enforcement. That presumption makes sense, because a refusal to disavow shows a substantial threat. To all this, Michigan has no response, let alone one that justifies a circuit split.

The entire point of pre-enforcement standing is that St. Joseph does *not* have to "await a future case," Resp. 46, to determine if it can continue exercising its religion. Nor must it embrace Michigan's "alternative"— preclearance of St. Joseph's religious hiring. That process itself violates St. Joseph's church autonomy. The free exercise of religion is not an act of grace from civil government. The district court should be reversed and St. Joseph's claims reinstated.

## ARGUMENT

### I.    Under the newly amended ELCRA, St. Joseph has standing and its claims are ripe.

St. Joseph can challenge the application of the newly amended ELCRA to its religious conduct as an employer, as an educational institution, and as a provider of services available to the public. In pre-enforcement cases, standing exists if the plaintiff shows (1) "conduct arguably affected with a constitutional interest"; (2) that conduct is "arguably proscribed by the statute [it] wish[es] to challenge"; and (3) there exists a "credible threat of enforcement." *SBA List*, 573 U.S. at 160, 162, 167 (cleaned up); *see* Resp. 17-18.

That's not how Michigan sees it, though. It suggests that St. Joseph wouldn't have standing unless it could prove that "Defendants will fail to consider established religious freedoms in applying Michigan's civil rights laws to St. Joseph." Resp. 36-37. But pre-enforcement standing is not defeated by the state promising to use the statute responsibly. "How Defendants plan to mitigate [St. Joseph's] risk of harm is a merits question." *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 390 n.6 (6th Cir. 2022) (rejecting defendants' "assurances" as "prematurely adjudicat[ing] the *merits*"). St. Joseph need only satisfy *SBA List*'s three-step test, which "sets a low threshold and is quite forgiving." *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022); *accord Platt v. Bd. of Comm'rs on Grievances and Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir.

2014) ("[I]n a pre-enforcement review case under the First Amendment (like this one), courts do not closely scrutinize the plaintiff's complaint for standing …."). Indeed, "when, as here, threatened enforcement effort implicates First Amendment rights, the standing inquiry tilts dramatically toward a finding of standing." *Dakotans for Health v. Noem*, 52 F.4th 381, 386 (8th Cir. 2022) (cleaned up). Because St. Joseph has met each step, it has pre-enforcement standing and its claims are ripe. *See* Br. 24.[1]

## A. St. Joseph's conduct is arguably affected with a constitutional interest.

Michigan concedes that St. Joseph's religiously protected conduct is "arguably affected with a constitutional interest." Resp. 18. Thus, the first step of *SBA List* is met. *See* Br. 24-25.

## B. The new ELCRA arguably proscribes St. Joseph's conduct.

### 1. Michigan concedes all that is necessary to meet this test.

St. Joseph meets the "arguably" proscribed standard because the statute "sweeps broadly and covers the subject matter of" St. Joseph's intended religious exercise. *SBA List*, 573 U.S. at 162. St. Joseph's

---

[1]  The "line between Article III standing and ripeness in preenforcement First Amendment challenges has evaporated." *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016). Nevertheless, Michigan analyzes them separately. *See* Resp. 39-47. The redundancy is evidenced in Michigan's briefing. *See id.* at 39 ("the District Court did not separately rule on ripeness"); *id.* ("for the same reasons they lack standing"); *id.* at 41 ("For the same reasons discussed in Argument I.B.2, …"). If St. Joseph has pre-enforcement standing, there is no question its claims are ripe.

intended religious exercise thus "*implicates*, if not violates, each provision of the law at issue." *Platt*, 769 F.3d at 451 (cleaned up & emphasis added). This makes St. Joseph's intended religious exercise "arguably" proscribed, thereby satisfying *SBA List* step two.

In response, Michigan concedes that the new ELCRA covers St. Joseph's religious exercise "as an employer, as an educational institution, and as a place of public accommodation to the extent its services are extended to the public." Resp. 19 (internal citations omitted); *see also* Br. 27-33. Michigan also concedes that the new ELCRA's antidiscrimination prohibitions are "general" and "broad." Resp. 27-28, 34. With these concessions, the inquiry ends: St. Joseph's conduct is "arguably" proscribed by the new, broad ELCRA.

Having conceded all that is necessary for St. Joseph to meet the "arguably" proscribed standard, Michigan attacks a strawman. Michigan argues that St. Joseph's conduct is not "arguably" proscribed because "the ELCRA does not *facially* proscribe St. Joseph from exercising constitutionally protected rights." Resp. 19 (emphasis added). But "facially proscrib[ing]" constitutional rights is different from "arguably" proscribing them, and the latter is all *SBA List* requires.

*SBA List*'s requirement is met when a plaintiff's conduct is "implicated" by the challenged statute, *Platt*, 769 F.3d at 451, based on "at least a *plausible*" interpretation of it, *Kentucky v. Yellen*, 54 F.4th 325, 337 (6th Cir. 2022). That plausible interpretation exists when a law

6

"sweeps broadly" and "covers" the plaintiff's conduct. *SBA List*, 573 U.S. at 162. Yet Michigan ignores *SBA List*'s "sweeps broadly" and "covers" language. So too with *Yellen*'s "plausible" language. Michigan purports to distinguish *Platt* because the statute there "directly proscribed" the plaintiff's "specific conduct," Resp. 27. That's not what *Platt* holds—*Platt* holds that "implicat[ing]" a law's prohibitions is enough. The same logic was embraced in *Carey v. Wolnitzek*, cited by *Platt*. *See* 614 F.3d 189, 196 (6th Cir. 2010) ("These aspects of the canon at least chill, and in some instances prohibit, these forms of communication."). Circuits nationwide agree: When a statute sweeps broadly and covers the plaintiff's constitutionally protected conduct, that conduct is thus "implicated" by the law and the "arguably" proscribed inquiry is satisfied.[2] *See* Br. 26, 35-36, 50-51.

Indeed, it would contradict *SBA List* to insist that St. Joseph's conduct be "facially" proscribed by the new ELCRA. In *SBA List*, the Supreme

---

[2]  *See Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 217 (5th Cir. 2023) (explaining that the "[s]tate demands too much of [plaintiff]" in asking it to show that its conduct is proscribed by the state's "alternative reading" of the challenged statute where, under the plaintiff's "arguable" reading, "the Act arguably sweeps broadly enough to capture [plaintiff's] conduct"); *Picard*, 42 F.4th at 98-99 (similar); *281 Care Comm. v. Arneson*, 766 F.3d 774, 781-82 (8th Cir. 2014) (similar); *Brown v. Kemp*, 86 F.4th 745, 766-67 (7th Cir. 2023) (holding that plaintiffs' conduct was arguably proscribed under statute with "very broad language" because the challenged provisions "push[ the statute] to its constitutional limits" and "[s]tate enforcement officials" "don't know exactly where [the constitutional] ceiling is or when [they] have crossed it").

Court rejected the "conten[tion] that SBA's fears of enforcement [we]re misplaced because SBA has not said it 'plans to lie or recklessly disregard the veracity of its speech,'" *i.e.*, engage in constitutionally unprotected speech. 573 U.S. at 163. Michigan makes the same argument here: St. Joseph lacks pre-enforcement standing "because the ELCRA … does not proscribe activity otherwise protected by the First Amendment." Resp. 19. As in *SBA List*, this "misses the point." 573 U.S. at 163. "Nothing in [the Supreme] Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *Id.* But that's what would be required if this Court adopted Michigan's position.

Here, by Michigan's own admission, the new ELCRA sweeps broadly and covers St. Joseph's constitutionally protected conduct. Resp. 19. The Court should therefore apply *SBA List*, not Michigan's novel and unfounded "facial" gloss.

### 2. To avoid its concession, Michigan conflates standing with the merits.

As St. Joseph explained, "for standing purposes, [courts] accept as valid the merits of [plaintiff's] legal claims." *Yellen*, 54 F.4th at 349 n.16 (cleaned up) (quoting *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022)); Br. 33-43. As such, it is reversible error to "conflate the merits of [the plaintiff's] claim with [its] standing to bring it." *Barber*, 31 F.4th at 390 (cleaned up). Just as in *Yellen*, "it would be inappropriate for us, at

the justiciability stage, to render a merits interpretation of [the ELCRA] and to then declare based on that merits interpretation that the controversy is not even justiciable." 54 F.4th at 349 n.16. This holding is fatal to Michigan's remaining responses.

Seeking to sidestep this clear rule, Michigan makes three mistakes:

***First***, Michigan argues that St. Joseph's conduct is not "arguably" proscribed because the ELCRA's public accommodations provisions are limited by a proviso: "[e]xcept where permitted by law." Resp. 19 (quoting MCL § 37.2302). Michigan suggests this proviso safeguards St. Joseph's religious conduct as a public accommodation because it necessarily "includes constitutional law." Resp. 19 (citing *Mich. Dep't of C. R. ex rel. Forton v. Waterford Twp. Dep't of Parks & Recreation*, 387 N.W.2d 821 (Mich. 1986)). Not so. In *Waterford*, the Michigan Supreme Court declined "to determine whether 'permitted by law' has reference to constitutional and common law as well as statutory law." 387 N.W.2d at 828 & n.6. Michigan's highest court has never said otherwise.

Michigan responds by conceding that "the term 'law' in this section does not appear to have been interpreted," while citing a lower state court case to claim that Michigan's interpretation here "is reasonable." Resp. 20 (citing *Champion v. Secretary of State*, 761 N.W.2d 747, 752 (Mich. App. 2008)). But Michigan's response only confirms that what "law" means in this proviso is a merits question—where courts "choos[e] between competing plausible interpretations of a statutory text." *Clark*

9

*v. Martinez*, 543 U.S. 371, 381 (2005). That's not the pre-enforcement standing analysis, where all St. Joseph needs is "at least a plausible interpretation" to show that its conduct is arguably proscribed. *Yellen*, 54 F.4th at 337. St. Joseph does *not* need to show its conduct "was in fact proscribed under the best interpretation of the statute or under the government's own interpretation." *Picard*, 42 F.4th at 98 (discussing *SBA List*).

Michigan cannot escape that, in every case, what "law" applies to protect St. Joseph's religious exercise turns "upon the initiative of [Michigan]." *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1183 (6th Cir. 1995). Answering that question would thus be "inappropriate" to resolve "at the justiciability stage." *Yellen*, 54 F.4th at 349 n.16. What matters for standing is that "[t]he broad scope of the [ELCRA's] language presents a realistic danger that [Michigan] could compromise the protection afforded by the First Amendment." *Dambrot*, 55 F.3d at 1183 (cleaned up).

***Second***, Michigan argues that St. Joseph's religious hiring is protected so long as its religious reasons "meet[]" the "criteria" for "bona fide occupational qualification (BFOQ)" exemptions—offered at five-year increments on a case-by-case basis. Resp. 30; *see also id.* at 19-20. As St. Joseph explained, this cold comfort ignores St. Joseph's allegations that the BFOQ process *itself* violates the First Amendment. Br. 29-31, 41-43. And Michigan's admission that the BFOQ process allows the state to

"make 'individualized exemptions' for employers," Resp. 44, confirms that pursuing St. Joseph for upholding its religious teachings on sexuality and marriage will be subjected to strict scrutiny, *see Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 685-88 (9th Cir. 2023) (en banc) ("the mere existence of government discretion is enough to render a policy not generally applicable") (citing *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1879 (2021)).

Michigan has no response to the BFOQ process itself being an arguable violation of the First Amendment's "structural" protection preventing "federal and state governments from becoming involved" in who the church selects to carry out its religious mission. *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015). Instead of disputing that this is what will happen if St. Joseph must seek a BFOQ for every religious employee, Michigan ignores *Conlon* and tries to limit the leading Supreme Court case (*Catholic Bishop*) to its "specific[s]." Resp. 23. This maneuver ignores repeated Supreme Court directives for courts and agencies to "stay out" of certain religious mission decisions altogether.[3] *See Our Lady of Guadalupe v. Morrissey-Berru*, 140

---

[3]  Michigan's response is also internally inconsistent. On the one hand, it claims that St. Joseph should rest easy because everyone who meets the BFOQ criteria—which should always include those invoking "established religious freedoms"—will be protected. Resp. 37. On the other hand, St. Joseph is repeatedly told not to "speculate" on whether it would receive a BFOQ and to instead ask for a "declaratory ruling,"

S. Ct. 2049, 2060 (2020) ("[C]ourts are bound to *stay out* of employment disputes involving those holding certain important positions with churches." (emphasis added)); *Carson v. Makin*, 596 U.S. 767, 787 (2022) ("scrutinizing whether and how a religious school pursues its educational mission would also raise serious concerns about state entanglement with religion and denominational favoritism"). Most importantly for pre-enforcement standing, "requir[ing] the [Church] to subject itself to the very framework it says unconstitutionally burdens its [religious exercise]" is "a principle [that] finds no support in [Supreme Court] standing jurisprudence." *Cruz*, 596 U.S. at 298 (citing *SBA List*, 573 U.S. at 158-59). Pointing to the BFOQ process is no answer when the process itself violates St. Joseph's rights.

**Third**, Michigan cites an irrelevant statutory rule of construction to make an unremarkable argument against standing: the ELCRA must "be interpreted in conjunction with … the [C]onstitution." Resp. 20 (citing MCL § 37.2705(1)). As an initial matter, the quotation is misleading. The cited provision guarantees that nothing in ELCRA "prevent[s] *the commission* from securing civil rights guaranteed" in "other" laws. MCL

---

because religious freedom is "fact dependent." Resp. 20 n.5, 34, 44, 47. Yet as to its key employees, "the First Amendment has struck the balance for us." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 196 (2012). St. Joseph is free to make "the selection of the individuals who play certain key roles" without Michigan's preapproval or second-guessing. *Our Lady*, 140 S. Ct. at 2060.

§ 37.2705(1) (emphasis added). Michigan's quotation conveniently omits this language. *See* Resp. 20. As explained in St. Joseph's opening brief, Br. 36-37, this provision licenses—but does not require—the Commission to consider the First Amendment in enforcing the ELCRA. Michigan has no response.

Additionally, taken on its merits, Michigan's argument proves too much. *Every* law must abide constitutional limitations. *See, e.g.*, U.S. Const. art. 6, cl. 2 (Supremacy Clause). Accordingly, a law's claim not to "reach constitutionally protected [activity]" does not answer whether constitutional activity is arguably proscribed. *Dambrot*, 55 F.3d at 1183. That's why pre-enforcement standing is not defeated just because an otherwise broad statute or rule claims to account for First Amendment or statutory rights. *See* Br. 34-36 (discussing *Dambrot*, *Doster*, and *Holder*). Nor is pre-enforcement standing defeated by nebulous commitments to "consider established religious freedoms" when enforcing nondiscrimination laws. *Compare* Resp. 37, *with* Br. 34-36 (discussing rejection of similar government assurances in *Religious Sisters of Mercy* and *Franciscan Alliance*). Michigan ignores all these cases and instead touts a truism that, if accepted, would eliminate pre-enforcement standing in First Amendment cases.[4]

---

[4]  Michigan's evasion continues with the district court's four "Michigan cases interpreting Michigan law." R. 58, Page ID # 1178. Michigan string-cites these cases as evidence that state courts "consider[] religious

In sum, Michigan argues as the district court held: "serious constitutional questions" can be avoided because "the ELCRA provides for consideration of First Amendment rights." Resp. 24; *see also* Opinion, R. 58, Page ID # 1171 ("courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent" (cleaned up)). But as this Court in *Yellen* held, the constitutional-doubt canon is "of minimal importance to … justiciability." 54 F.4th at 349 n.16. As with Michigan's other arguments, embracing the canon here collapses standing with the merits. *See id.* ("inappropriate"). This manifest error cannot be salvaged by Michigan's "assurances" and "conjecture" about how protective it promises to be toward religious freedom after St. Joseph is investigated, charged, or sued. *See Barber*, 31 F.4th at 390 n.6. That "is a merits question." *Id.* "For standing purposes," St. Joseph's constitutional claims are "accept[ed] as valid." *Cruz*, 596 U.S. at 298.

\*  \*  \*

The new ELCRA sweeps broadly and implicates St. Joseph's religious conduct. That is all that is needed to meet the "arguably" proscribed

---

freedoms and provide[] exemptions for religious practice under the ELCRA." Resp. 21-22. But these cases reflect either (1) losses for religious claimants (*McLeod*), (2) religious protections that were later overruled (*Porth*), or (3) enforcement of the ELCRA in ways that violate the Supreme Court's articulation of the ministerial exception (*Weishuhn*; *Assemany*). *See* Br. 39-41. Despite St. Joseph pointing all this out, *see id.*, Michigan has no response.

standard under *SBA List*. Michigan's counterarguments are merits arguments.

## C.    St. Joseph faces a credible threat of enforcement.

### 1.    Michigan refuses to disavow enforcement, so a credible threat is presumed.

Courts presume a credible threat of enforcement when a newly enacted statute covers a plaintiff's intended conduct and the state refuses to disavow enforcement. Br. 44; *see also Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."). This is St. Joseph's case. Here, St. Joseph is challenging a new statutory amendment, and Michigan refuses to disavow enforcement of it against St. Joseph. Br. 45. Michigan's refusal to disavow continues here, calling disavowal "impossible" and something it "cannot generally [do] where [ELCRA] broadly prohibits discrimination." Resp. 34. In ten other circuits, a credible threat of enforcement would therefore be presumed. *See* Br. 44 & n.3 (collecting cases).

In response, Michigan ignores the enforcement presumption embraced by ten other circuits. Nor does Michigan acknowledge that this Court has already embraced the logic behind the presumption. Br. 46; *NRA v. Magaw*, 132 F.3d 272, 289 (6th Cir. 1997) (explaining that it is "inconceivable that the government would enact a widely publicized

15

law … and then sit idly by"). Instead, Michigan's only answer is that "disavowal is not a requirement for a finding of lack of standing." Resp. 34. This position not only splits with ten other circuits, but this Court has also rejected it. As this Court explained in *Platt*, "refus[al] to disavow the enforcement of the Code as applied to Platt" "supports[] our conclusion that Platt has standing." *Platt*, 769 F.3d at 452; *see also Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1035 (6th Cir. 2022) (finding a credible threat because defendants "never provided clear assurances that will *not* prosecute ULC ministers"). Thus, this Court should decline Michigan's invitation to ignore controlling precedent and, in doing so, create a circuit split. Instead, it should allow St. Joseph's suit to proceed, because "a threat of future enforcement is considered especially substantial" when the state "ha[s] not disavowed enforcement." *Plunderbund Media, L.L.C. v. DeWine*, 753 F. App'x 362, 371 (6th Cir. 2018) (cleaned up) (quoting *SBA List*, 573 U.S. at 165).

In addition to ignoring the enforcement presumption, Michigan insists that "[s]ome combination of [*McKay*'s] factors [are] required." Resp. 26. But as St. Joseph explained, *McKay* is inapplicable here. Br. 44-49. This Court has held that "a variety of facts can demonstrate a credible threat of enforcement," and such facts need not be the ones that *McKay* "highlighted." *Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022). Indeed, just last summer, this Court found a credible threat of enforcement without applying the *McKay* factors. *See Block v. Canepa*,

16

74 F.4th 400, 408-11 (6th Cir. 2023). And *Platt* found a credible threat of enforcement because the statute at issue allowed for private enforcement and the state refused to disavow enforcement. 769 F.3d at 451-52. Here, those same facts are present, *see* Br. 46-49, and that's enough to presume a credible threat.

### 2. Even if the *McKay* factors apply, St. Joseph meets them.

If this Court applies the *McKay* factors, St. Joseph has still demonstrated a credible threat of enforcement. *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016). Under *McKay*, a credible threat of enforcement exists when a plaintiff "allege[s] a subjective chill *and* point[s] to some combination of the following factors": (1) "a history of past enforcement"; (2) "enforcement warning letters sent to the plaintiffs regarding their specific conduct"; (3) "an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action"; and (4) "a defendant's refusal to disavow enforcement." *Id.*

Michigan does not dispute the chill to St. Joseph's First Amendment rights, and it acknowledges that two of the *McKay* factors—disavowal (factor 4) and public enforcement (factor 3)—could "weigh[] against Defendants." Resp. 33 (factor 3); *id.* at 34 ("Even if the 'disavowal' factor weighs in favor of St. Joseph …"). Combined with at least some enforcement history—which could just be *Rouch World* alone—that's enough to satisfy *McKay*. Indeed, "this court has held there to be standing

for a pre-enforcement challenge without" either "significant history of enforcement" (factor one) or "specific correspondence whatsoever" (factor two). *See Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550-51 (6th Cir. 2021). So if *McKay* applies, the same result should follow.

***Disavowal.*** Michigan refuses to disavow enforcement against St. Joseph. That's because, in its view, "[i]t would be impossible for [Michigan] to disavow application of statutes as broad as the ELCRA" against St. Joseph. Resp. 34. It goes even further and says that "disavowal is not a requirement for finding a lack of standing." *Id.* This is wrong and underscores why the district court must be reversed.

From the Supreme Court on down, courts have universally agreed that a failure to disavow is significant evidence of a credible threat. Br. 50-51 (discussing "[m]ultiple circuits"); *see also SBA List*, 573 U.S. at 165 (finding a credible threat because "respondents have not disavowed enforcement"); *Plunderbund*, 753 F. App'x at 371 ("a threat of future enforcement is considered especially substantial when the [government] 'ha[s] not disavowed enforcement'" (quoting *SBA List*, 573 U.S. at 165)); *Cal. Trucking Ass'n. v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) ("state's refusal to disavow enforcement" "is strong evidence that the state intends to enforce the law"). And that credible threat doesn't disappear just because the government claims that disavowal is impossible. Br. 50-51. Indeed, it only confirms those fears are reasonable. If prosecution was not "remotely possible," then disavowal would be easy. *Babbitt v. United*

18

*Farm Workers Nat'l Union*, 442 U.S. 289, 299 (1979). But here Michigan refuses to disavow and tries to excuse it by saying that it is "impossible" and "not a requirement." This is inconsistent with the national consensus.

In addition, Michigan repeatedly claims that it has "yet to consider or apply the ELCRA's protections … based on sexual orientation and gender identity to a complaint against an entity like St. Joseph and assess First Amendment religious protections." Resp. 29; *see also* Br. 13. But Michigan has had no shortage of opportunities to "consider" the First Amendment—given the surge of complaints following the Commission's 2018 interpretive statement, the *Rouch World* decision, the Commission's rejection of "any amendments" that would reduce ELCRA's impact, General Nessel's statement that religious objectors are "bigot[s]," the ongoing investigations against Catholic Charities and Emmaus Health, and the private lawsuit under ELCRA against Calvin University. *See* Br. 9-15; *see also* Calvin Univ. Br., ECF 24, 2-7.

Even if Michigan really hasn't "consider[ed]" how the First Amendment applies to the new ELCRA—while simultaneously refusing to disavow enforcement—"the law of standing does not place the burden on the plaintiff to show an intent by the government to enforce the law against it." *Vitagliano v. County of Westchester*, 71 F.4th 130, 138 (2d Cir. 2023). Michigan cannot escape review with an understanding of ELCRA "so vague that the scope of liability [is] both 'unknown by [itself] and

19

unknowable to those regulated by it.'" *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 377 (5th Cir. 2022).

Finally, Michigan's reliance on *Davis v. Colerain Township* is misplaced. 51 F.4th 164 (6th Cir. 2022). There, this Court held that a refusal to disavow enforcement didn't supply pre-enforcement standing because the plaintiff hadn't demonstrated an intent "to engage in speech that might arguably fall within the rule." *Id.* at 174. That makes sense because an intent to engage in conduct that's arguably proscribed is an independent requirement for pre-enforcement standing. *SBA List*, 573 U.S. at 162. But *Davis* isn't relevant here.[5] As the district court explained, St. Joseph's intended conduct "may fall within the purview" of the new ELCRA. R. 58, Page ID # 1170; Br. 51. Thus, Michigan's refusal to disavow enforcement supports pre-enforcement standing.

***Enforcement History.*** Michigan has a long and aggressive history of enforcing ELCRA. In the last few years alone, Michigan resolved thousands of ELCRA discrimination complaints. Br. 51-52. And after the Commission reinterpreted "sex" to include sexual orientation and gender identity, sex discrimination claims skyrocketed, reaching an all-time high in 2022. Br. 52. Put together, that's more than enough history to supply a credible threat of enforcement. *Speech First, Inc. v. Schlissel*,

---

[5]  Nor is *Green Party of Tennessee v. Hargett* relevant. 791 F.3d 684 (6th Cir. 2015). St. Joseph never cited that case, so it's odd for Michigan to spend about a page distinguishing it as "not on point." Resp. 35; *see also id.* at 36.

939 F.3d 756, 766 (6th Cir. 2019); *see also Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 921 (5th Cir. 2023) (finding one case sufficient).

Attempting to brush this extensive history aside, Michigan responds that its investigations don't support pre-enforcement standing because they don't involve enforcement against St. Joseph's specific conduct. Resp. 29-30. But that supposed distinction is as irrelevant as it is untrue.

First, this is irrelevant because this Court has never required specific enforcement history for pre-enforcement standing. Br. 52. Instead, all St. Joseph must show is that Michigan "*does prosecute*" violations of ELCRA generally. *Block*, 74 F.4th at 410; *see also Speech First*, 939 F.3d at 766 (similar).

In response, Michigan misreads *Block* and *Speech First*—claiming that both require St. Joseph to show enforcement history against "the same, specific conduct." Resp. 31. Not so. In fact, *Block* rejected that argument. There, this Court held that a pre-enforcement plaintiff who wanted to transport wine, but "d[id] not … want" to resell beer or liquor, was not "obligated to show that Ohio prosecuted people for transporting wine, rather than liquor." *Block*, 74 F.4th at 410. Adopting that "flawed" standard would overlook what matters for pre-enforcement standing: the state "prosecutes violations of the Transportation Limit, which is the statute at issue in this appeal." *Id.* That's exactly what St. Joseph has done here, showing that Michigan prosecutes ELCRA violations. Nothing in *Speech First* is to the contrary. Rather this Court said it "missed the

point" to search for specific enforcement history, because "[t]he lack of [specific] discipline ... could just as well indicate that speech has already been chilled." *Speech First*, 939 F.3d at 766. Here, St. Joseph has shown that Michigan prosecutes ELCRA violations, and in record numbers since it began redefining "sex" discrimination. *See* Br. 10-11. That's enough.

Second, Michigan's distinction is also untrue. Even if specific enforcement history was required, Michigan *has* enforced ELCRA against religious entities like St. Joseph. Br. 14-15. Soon after the new ELCRA was enacted, the Commission began investigating Catholic Charities of Shiawassee and Genesee Counties—within the same Diocese as St. Joseph—for gender identity discrimination. Br. 14; Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, R. 47, Page ID # 882. Similarly, Michigan has also recently investigated Emmaus Health Partners, a Catholic health care provider, for similar reasons. Br. 14. And when it comes to private enforcement, a former Calvin University employee sued the school for sexual orientation discrimination almost immediately after the new ELCRA was enacted. Calvin Univ. Br., 2-7. All these examples disprove Michigan's claim that ELCRA has never been enforced against religious entities like St. Joseph.

Michigan's response is consigned to a footnote, Resp. 29 n.8, asking this Court to ignore the enforcement behind the curtain. But here, Michigan does not claim that the existence of these enforcement actions—or the allegations contained within them—are "subject to

reasonable dispute." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 579 (6th Cir. 2012); *see* Resp. 29 n.8 ("the filing of a complaint with the MDCR and subsequent filing of a charge may be judicially noticed"). Thus, this Court can take judicial notice of them.

Finally, even without these examples, *Rouch World* establishes a sufficient enforcement history. In *Braidwood Management, Inc. v. EEOC*, the Fifth Circuit held that plaintiffs had pre-enforcement standing to challenge EEOC guidance that—like the Commission's 2018 interpretive statement—reinterpreted "sex" discrimination to include sexual orientation and gender identity. 70 F.4th at 921. And much like Michigan does here, the EEOC argued there that the plaintiffs didn't have standing because they couldn't identify a history of enforcement against their intended conduct. *Id.* at 926.

But the Fifth Circuit disagreed. Although the plaintiffs could only identify one case—*Bostock v. Clayton County*, in which the Supreme Court extended Title VII's prohibition of sex discrimination to sexual orientation and gender identity, 140 S. Ct. 1731, 1743 (2020)—the Fifth Circuit held that "one case, especially one landmark case, … can be considered a [sufficient] history of enforcement." *Braidwood*, 70 F.4th at 927.

The same logic applies here. In *Rouch World*, the Michigan Supreme Court relied on *Bostock* and held that "discrimination on the basis of sexual orientation necessarily involves discrimination because of sex in

23

violation of the ELCRA." *Rouch World, LLC v. Dep't of C.R.*, 987 N.W.2d 501, 513. But unlike Title VII and *Bostock*, neither *Rouch World* nor ELCRA contain protections for religious entities. *See id.* at 556 (Viviano, J., dissenting). Thus, this "landmark [Michigan] case" is "a clear shot across the bow" against St. Joseph's religious practices, and it reinforces St. Joseph's fear of prosecution. *Braidwood*, 70 F.4th at 927. This factor therefore supports standing.

**Enforcement Threats.** *McKay* also considers whether "enforcement warning letters [were] sent to the plaintiffs regarding their specific conduct." 823 F.3d at 869. Under this Court's precedent, "standing for a pre-enforcement challenge" exists "without any warning letter or similar specific correspondence whatsoever." *Online Merchs. Guild*, 995 F.3d at 551. So St. Joseph doesn't need to meet this factor.

And, warning letter or not, General Nessel has displayed significant hostility towards religious liberty. Br. 11-12, 47, 50, 52. For example, General Nessel praised the Commission's religious-liberty-free reinterpretation of ELCRA, explaining that religious entities who follow their sincerely held religious beliefs "are not religious heroes, they are bigots." Second Am. Compl., R. 40, Page ID # 682. She then championed the new religious-liberty-free ELCRA amendment because it would "enshrine" *Rouch World* and ensure that it could "withstand future legal attacks." R. 40, Page ID # 661. Not only that, but General Nessel also once described proponents of a law designed to protect religious foster

24

care as "'hate mongers' who disliked gay people more than they cared about children." R. 40, Page ID # 682. All this hostility gives rise to a credible threat of enforcement.

Michigan dismisses the Attorney General's religious hostility, however, claiming that General Nessel's actions don't support a threat of prosecution because she "does not enforce the ELCRA." Resp. 32. That isn't true, though, as the Attorney General represents the Commission in any court proceeding. MCL § 37.2602(b). Indeed, General Nessel argued *Rouch World* before the Michigan Supreme Court. And "[e]ven if an official lacks actual power to punish, the threat of punishment from a public official who appears to have punitive authority can be enough to produce an objective chill." *Speech First*, 939 F.3d at 764. Of course, the Attorney General—the State's chief law enforcement officer—"appears to have punitive authority." This factor therefore favors St. Joseph.

**Public Enforcement.** Finally, a threat of enforcement is credible when "an attribute of the challenged statute … makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action." *McKay*, 823 F.3d at 869. Here, ELCRA allows "[a] person alleging violation of this act may bring a civil action for appropriate injunctive relief or damages, both." MCL § 37.2801; Br. 53. As a result, this provision "increases the likelihood that [St. Joseph] will have to defend against" lawsuits under the statute. *Online Merchs. Guild*, 995 F.3d at 551.

25

Michigan concedes, as it must, that private individuals "are statutorily empowered to file" complaints under ELCRA. Resp. 33. Yet it offers no meaningful response other than to repeat that "such a complaint may not be premised on discrimination that is 'permitted by law.'" *Id.* (citing MCL § 37.2302). But that provision applies only to ELCRA's public accommodations provision. Br. 54. Regardless, it offers St. Joseph no comfort because "the universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines or ethical obligations," and "there is a real risk of complaints from" those who, like Attorney General Nessel, may dislike St. Joseph's sincerely held religious beliefs. *SBA List*, 573 U.S. at 164; Br. 54. Indeed, Michigan acknowledges that this factor (like disavowal) might "weigh[] against Defendants." Resp. 33; *see also id.* at 34 (similar as to disavowal). Thus, this factor supports standing.

*  *  *

This Court should follow the ten other circuits the presume a credible threat of enforcement against a newly enacted statute where the state refuses to disavow enforcement. Yet, even under *McKay*, Plaintiffs have shown a credible threat of enforcement. *See Online Merchants*, 995 F.3d at 550. *SBA List* step three is thus met, and the district court should therefore be reversed.

**D. Declaratory and injunctive relief are appropriate remedies.**

St. Joseph explained why it is entitled to declaratory and injunctive relief before its constitutional rights are violated. Br. 55-56. Michigan has no response, only to concede that this "case may otherwise present significant constitutional questions." Resp. 3. Michigan is right about that. So St. Joseph should therefore receive its requested relief.

## CONCLUSION

The district court should be reversed, and St. Joseph should receive declaratory and injunctive relief.

Respectfully submitted,

/s/ *William J. Haun*
William J. Haun
Lori H. Windham
Nicholas R. Reaves
Michael J. O'Brien† *
Richard C. Osborne*
   THE BECKET FUND FOR
RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
   Suite 400
Washington, DC 20006
(202) 955-0095
*whaun@becketlaw.org*
† Sixth Circuit admission pending.

\* Not a member of the D.C. Bar; admitted in Louisiana and New Jersey respectively. Supervised by licensed D.C. Bar members.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limit in Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,306 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

February 9, 2024                    */s/ William J. Haun*
                                         William J. Haun

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on February 9, 2024

I certify that all participants in the case have been served a copy of the foregoing by the appellate CM/ECF system or by other electronic means.

February 9, 2024                    /s/ *William J. Haun*
                                   William J. Haun